## PENNIMAN & al vs. LYMAN PATCHIN.

An attorney having a demand in his hands for collection is not authorised to assign it to a third person so as to bind his client. If he do assign it and the assignee receive the money, assumpsit for money had and received lies in favor of the client against the assignee.

There is in such case a *privity* between the 'parties, and the law implies a promise. In such a case the declarations of the 'defendant at the time of receiving the money are not admissible in his favor.

Nor is the original debtor a competent witness for the plaintiff to prove the payment to the defendant without a discharge.

Cases brought up to the Supreme Court by exceptions are treated as upon writ of Error.

This is an action of assumpsit for *money had and received.*—Plea, Non Assumpsit.

On the trial of the issue the plaintiffs claimed to recover of the defendant a certain sum of money which was found due to them from Thomas Brownell by an award of arbitrators made on the 16th day of November 1830, which had been assigned to the defendant by one Daniel Church, and which had been paid to the defendant by said Thomas Brownell. The said award together with the assignment of the said Church on which was the receipt of the defendant, were read in evidence to to the Jury and are as follows.

Whereas there are several accounts depending and divers controversies and disputes having arisen between Daniel Church of Bennington and Thomas Brownell of Pownal, both of the County of Bennington and State of Vermont, concerning their Book Accounts, and also a suit in Chancery brought by the said Daniel in favor of T. I. Penniman & al. against said Brownell on a mortgage

BENNINGTON,
February.
1833.

Penniman & al
vs.
Patchin.

and notes, given by Alson Squires to Solomon Wright, jr. and for putting an end to said disputes, the parties have entered into an agreement in writing, bearing date Sept. 14th, 1830, to refer the said disputes to the undersigned arbitrators. Now know ye that having duly examined the proofs and allegations of both the said parties—do make out this as our award between said parties in manner following, that is to say, that all further prosecutions between said parties shall cease and be no longer continued ; and we do also award and order that the said Thomas Brownell shall pay or cause to be paid to the said Daniel Church the sum of one hundred and fifty-nine dollars and sixty-nine cents, to balance their book accounts, and we do hereby further award and order that the said Thomas Brownel shall pay or cause to be paid, for the said T. J. Penniman and Parmalee, to the said Danl. Church, the further sum of one hundred and one dollars and eighty-five cents as a balance due him on the aforesaid suit in Chancery ; and we do also further award that the said Thos. Brownell defray the cost of this arbitration, taxed at ten dollars.

WILLIAM HENRY  
BUCKLEY SQUIRES, } *Arbitrators.*  
JOHN NORTON.

Bennington, Nov. 6, 1830.

*Bennington, 24th Nov.* 1830.

I hereby, for value received, assign and transfer to Lyman Patchin the within awards, and authorize him to collect the same as I could or might personally collect the same.

DANIEL CHURCH.

*December 3d.* 1830.

Received in full of Capt. Thomas Brownell of the within award.

L. PATCHIN.

The plaintiff then offered the said Thomas Brownell as a witness to prove that he paid to the defendant the money claimed by the plaintiffs. To the admission of which testimony the defendant objected on the ground that the said Thomas Brownell was interested in the event of the suit,

BENNINGTON,
. *February*,
1833.

Penniman & al
*vs.*
Patchin.

he being the person who owed the money claimed by the plaintiffs, to the plaintiffs, and who paid it to the defenant without any authority from the plaintiffs and not for the use of the plaintiffs. But the Court overruled the objection and admitted the witness who testified to the jury as above stated.

The defendant offered to prove by Blackman E. Brownell the conversation which took place between Lyman Patchin and Thomas Brownell at the time the bargain was made between them respecting the above mentioned money, to show that Lyman Patchin was an agent for Thomas Brownel, in receiving said money. To the admission of which testimony so far as it regarded what was said by Lyman Patchin at that time, the plaintiff objected and the testimony was rejected by the Court. But the said Blackman testified that he paid the money on account of his father, Thomas Brownell, to the defendant, that the defendant executed the receipt and delivered up to him the award and assignment; and the assignment and receipt were then on the award as they now are.

The Court charged the jury that an attorney employed to manage a suit or collect a bebt as such, and by virtue of his authority as such attorney only, could not sell or transfer a note or demand belonging to his client, in any manner whatever, and the jury returned a verdict for the plaintiffs. To which decisions of the Court and charge to the jury the defendant excepted. The exception was allowed, and the case passed to the Supreme Court.

*Blackman, for defendant.*—1st. It is contended by the defendant that Thomas Brownel was interested in the event of this suit, because, 1st. If the plaintiffs recover this debt of the defendant, it will clear Brownel from all responsibility to the plaintiffs, and there can be no doubt but that Brownel would be still liable to plaintiffs; if he paid the money to the defendant without any authority from the plaintiffs.

2d. If Brownel had any authority from the plaintiffs it was from Church, their agent and attorney, and if he could authorize Brownell to pay it to Patchin, and Patchin to receive it, could he not also authorise Patchin to pay it to

himself; and could he not as attorney receive it and dis-
charge Brownel and Patchin from all liability to the plain-
tiffs? If he could not, Brownel would still be liable to
plaintiffs, and Patchin to Brownel.

BENNINGTON,
February,
1833.

Penniman & al
vs.
Patchin.

2d. The declarations of Patchin, at the time he made
the contract with Brownel, that he was the agent of Brow-
nel, ought to have been admitted, as it was a fact connect-
ed with the matter in dispute and did not affect the plain-
tiffs in any manner, only as the actual existence of the
fact affected the nature of the transaction itself, and as a
mere fact and part of the *res gestæ* it ought to have been
admitted. 1 Starkies Ev. 52. If Patchin acted as the
agent of Brownel, he would be accountable to him for his
acts, and to no other person ; and the plaintiffs could not
maintain an action against him.   And if the plaintiffs, at-
tempt to make Patchin liable on a transaction which took
place between himself, then why not show the whole that
took place at that time, which cannot be done unless
we are permitted to prove what Patchin said. If money
be paid to an agent for the use of his principal, the agent
who has paid it over is not liable to an action. 2 Star-
kies Ev. 113.

3d. There was no privity of contract between the plain-
tiffs and defendant, as the defendant did not receive the
money to plaintiffs use, but to his own use.  2 Starkies
Ev. 106.   If there was any contract on the part of Patchin
to pay this, it was an implied one, and implied too against
his express dissent, which would not constitute such priv-
ity between the parties as would be necessary to make the
defendant liable to the plaintiffs.   14 East. 596, *Williams*
vs. *Everett;* 1 Chit. Plead. 305 ; 3 Vt. Rep. 144, *Burnap*
vs. *Partridge.*   It is in fact, assigning a right of an action
belonging to Brownel, (if there was any right of action any
where) to plaintiffs, which is not authorised by the Laws
of this State.

4th. The Court charged the jury, that an attorney as
such had no authority to sell or transfer a demand belong-
ing to his client.  Admitting this to be correct in certain
cases, still as the plaintiffs reside and have resided out of
this State during all the time this demand was in the hands

Bennington,
February,
1833.

Penniman & al
vs.
Patchin.

of Mr. Church, which was ten or eleven years, that they had suffered him to make any disposition of it he pleased, by changing the security as he pleased and finally submitting it to arbitration, it is conceived that any person would suppose that Church was authorised to sell it in any manner he should think best.

*Bennet & Aikin, for plaintiffs.*—1st. The charge of the Court was correct. An attorney at law, is the special agent of his client, employed for specific purposes and consequently clothed with specific and limited powers. The purpose of his employment is to collect the debt of his client according to the customary and established course of judicial proceedings; and his powers are restricted to to the proper execution of this purpose. 7 Cranch, 436, He cannot compromise his clients debt.

He cannot make his clients bailiffs to their debtor, by receiving securities to collect, and thereby, render them liable to an action of account. 18 Mass. R. 319.

He cannot enter a retraxit on the record, for that is a perpetual bar. Beachers case, 8 Coke. 58.

He cannot discharge the debtor from custody on execution without satisfaction. 10 John. R. 220.

Having prosecuted the suit to final judgement, he cannot discharge the debtor for a less sum than that recovered. 18 Mass. R. 347; 8 John. R. 361.

The powers claimed for attornies in the present case, would in the language of Chief Justice Kent, be enormous and dangerous to clients.

2d. The next question we shall consider arises on the decision of the Court admitting Brownel to testify.

Church having been the attorney of the plaintiffs for the collection of this debt, and that fact being known to Brownell, he would be justified in treating him as such attorney, while the papers should remain in his hands, or until notified that his authority had been countermanded by the creditors. In the present case no evidence was given of notice of such countermand. He would therefore be justified in paying to Church or his order, provided he paid in good faith, as he undoubtedly did in the present case. This payment to a plaintiffs late attorney, who has been re-

moved by the party but without order of Court has been held good.    1 Blk. 8.

But if this is not so, the fact to which Brownel testified was abundantly made out by other proof, viz. the receipt of the defendant himself on the award, and the testimony of Blackman E. Brownel, the defendant's own witness, and no contradictory evidence was given or offered.    6 Bac. Ab. 659 ; 3 East. 451 ; 1 Cains R. 157 ; Same, 160.

If the witness had been rejected, the verdict must therefore have been the same.    Under such circumstancess a new trial will never be granted.    2 Cain. 129 ; 2 Stark. Ev. 758.

3d. In regard to the remaining point, it is a sufficient answer to say, that the Bill of exceptions discloses nothing. It merely states that the defendant offered to prove the conversation that took place between Lyman Patchin and Thomas Brownel, at the time the bargain was made between them, respecting the above mentioned money, to show that Patchin was agent of Church, without stating what the conversation was.    It not appearing what the evidence offered was, if any was offered, it is impossible for this Court to say that the County Court erred in rejecting it ; for it cannot appear that it had any tendency to prove the fact to establish which it was offered.    1 Aikens Rep. 210 ; 2 Aikens Rep. 26.

But let it be supposed that the offer of the defendant was to prove that Patchin stated at the time refered to and Brownel conceded that he, Patchin, was acting as the agent of Church ; still the evidence would be inadmissible.

For, First, the statements of Brownel could not be evidence ; he himself is a witness.

Secondly, it is *res inter alios acta,* and therefore inadmissible.

Thirdly, it contravenes the general rule, that the declarations of a party not assented to by the adverse party, are not evidence in favor of him who makes them.

The opinion of the Court was delivered by

PHELPS, J.—This is an action of Assumpsit, to recover a sum of money, paid by one T. Brownel to the defendant,

Bennington,
February,
1833.
───────
Penniman & al
vs.
Patchin.

under the following circumstances. One D. Church, having in his hands as an attorney, for collection, a demand in favor of the plaintiffs, against Brownel, and some dispute having arisen respecting it, Church (as it would seem, by consent, or with the approbation of the plaintiffs,) submitted the matter to arbitration. The arbitrators awarded, among other matters, "that said Brownel pay to said Church, for the said Penniman & Parmalee the sum of $101,85, as a balance due" on the aforesaid demand. This demand arising on this award, was afterwards assigned by Church to the defendant, and the amount paid to the defendant by Brownel.

It is admitted that the money in question was the property of the plaintiffs; but various reasons are urged why the plaintiffs should not recover of the defendant in this action.

And first, it is insisted that the assignment by Church, was effectual to pass the property to the defendant, and that the plaintiffs' only remedy is against Church.

We think otherwise. An attorney is a special agent.— His powers are limited to the purpose of his employment, and are such and such only, as are necessary for the accomplishment of that purpose. He may take all necessary measures, for the recovery of the demand, obtain judgment, receive the money, and, upon such receipt, give discharges; but he is not authorised to make any disposition of the demand, or exercise any authority over it, which is not necessarily involved in the discharge of his duty. Hence he can not compromise a demand, without special authority for that purpose, nor discharge it without satisfaction. Much less can he assign it for his own benefit; such an act being not only foreign to the purpose of his employment, but inconsistent with it. A power so liable to abuse (which indeed could hardly be exercised without abuse) can, with no propriety, be admitted. We are all agreed therefore, that the assignment of Church does not authorise the defendant to retain the money.

It is further urged that there is no privity between these parties, and that the law will not imply a promise against the express dissent of the party.

This position is untrue in both particulars. There was

certainly a privity between the plaintiffs and Church, in relation to this business, he being their mere agent in the transaction; and if he delegates to the defendant his au- thority to receive the money, which he certainly might do, there is the same privity between the plaintiffs and defendant. The circumstance that Church attempted to confer a greater authority than he possessed, does not vary the case. There is a privity between all these parties, as between the principal, the agent, and the sub-agent. If C. had received it, he would have been accountable to the plaintiffs, and if another receives it by his direction, that other receives it, by an authority delegated in the first instance by the plaintiffs, although transmitted through C, and the accountability continues. The difficulty consists in this, that C. could impart to the defendant no right to retain the money as against the plaintiffs. The authority to receive it he might impart, and this renders the defendant so far as concerns the reception of the money, the agent of the plaintiffs.

Supposing, however, this view of the subject to be incorrect, what is the result? Simply an attempt, on the part of the defendant, to appropriate the money of the plaintiffs to his own use. The award itself shewed to whom the money belonged, and, if the purpose of the defendant was to withhold it from the plaintiffs, that purpose can be accounted for, only upon some supposed sinister design. In this point of view the act was tortious. And the law does in many cases imply a promise, against the express dissent of the party. It does so in all cases, where the money of another has been obtained under circumstances of fraud or circumvention, and where, in equity and good conscience, it cannot be retained. I use the terms in the sense in which they are used in the books, and with reference to the numerous cases, where this action is wielded to the great purposes of justice. See 2 Starkie's Ev. 109, & cases there cited.

The case of *Williams* vs. *Everett*, 14 East. 144, has been relied on by the defendant. It bears however no analogy to this. In that case, the money was not received by virtue of any authority, supposed or pretended, from the plaintiff. It was remitted with a view to some negociation, to

45

Bennington,
February,
1833.
_____
Penniman & al
vs.
Patchin.

be entered into by the defendant E. with the plaintiff W., in relation to the debt due from the person remitting it.— The defendant declined the commission; and there was no ground for holding the money, in that case, to be the money of the plaintiff. In this case, the money was paid to the defendant by direction of the plaintiffs' attorney, and that, under circumstances which discharged the claim against Brownel. Had this been the fact in the case of *Williams* vs. *Everett*, the result would have been different. It is also insisted, that the declarations of the defendant, at the time of receiving the money from Brownel were improperly rejected at the trial. What the tenor of those declarations was, we are not informed. It was incumbent upon the party excepting, to show enough of their character to enable this Court to judge of their relevancy. But if the object was to show generally, that the defendant acted as the agent of Brownel, it is very certain that they could not be admissible. He had taken an assignment of the debt against Brownel, had received the amount, and discharged the debt. How is it possible then, that any declarations of his could have made him the agent of Brownel? The idea of such an agency is inconsistent with the whole transaction. And the inconsistency of his declarations with the written evidence, was a sufficient reason for their rejection.

The only remaining point in the case, is the question as to the competency of Brownel. It is very clear that a recovery in this case would forever quiet him as to this demand. The facts stated in the case, if followed by a recovery in this action, would show an actual satisfaction to the plaintiffs. And in a future action against the witness, this recovery might be used as evidence, not only of that fact, but also of their adopting the payment made to the defendant. There is no doubt then, if a recovery is had here, upon the testimony of the witness, he is forever discharged. The County Court went probably upon the ground he was discharged at all events by the payment of the debt, either to Church, or the defendant. The fact being proved, it would probably be so; but the fallacy of the argument is, that he was called to prove this fact, and by his testimony, in this case, to establish that defence.—

If that fact were not proved, in this case, he is *prima facie* liable ; and whether, on another occasion, he could prove it by other evidence, is not for us to determine. It is e-nough for us that he is called to prove a fact which cre-ates a perpetual bar in his favor, and without that fact he is liable still.

BENNINGTON,
February.
1833.

Penniman & al
vs.
Patchin.

The testimony of this witness was probably unnecessa-ry, and why he should have been pressed upon the Court as a witness, after the defendant's receipt was in evidence, it is difficult to imagine. And were this to be regarded as a motion for a new trial merely, resting in the discre-tion of the Court, we should hesitate before granting a new trial, on account of testimony, which probably did neither good nor hurt. But a case brought here upon ex-ceptions, stands as upon a writ of error. We can merely reverse or affirm the judgement, and if error has interven-ed, we have no discretion ; nor can we look farther into the merits of the case, than they are disclosed of record.

On the last point therefore, the judgement of the Coun-ty Court is reversed, and the cause remanded.