## ELLEN V. EATON v. WILLIAM H. KNOWLES.

*Agency—Purchase by husband of a mortgage for his wife—And employment of solicitor to foreclose same—Ratified by wife's bringing suit for breach of covenant in assignment—And putting foreclosure proceedings in evidence in such suit—Such acts and ratification have no tendency to establish a general agency—Authority to compromise a claim—Not implied from authority to collect it and receive payment—A solicitor employed to foreclose a mortgage—Has no power, in the absence of special authority, to compromise complainant's claim—For breach of a covenant of her assignor that a certain sum was due on the mortgage—Even though retained to prosecute a suit for such breach—Payments on non-negotiable securities to alleged agent—Person making, acts at his peril if papers not produced by such agent—Unless he can show actual payment to the principal—Or special authority of agent to receive the money—Husband an incompetent witness, under How. Stat. sec. 7546, to prove his right to compromise claim of wife—Which settlement she repudiates—Damages —Measure of in suit for breach of covenant of assignor of mortgage that nothing had been paid thereon—It appearing that the debt had been paid—Is the value of the mortgage and note at time of purchase if nothing had been paid thereon—If maker irresponsible and security valueless, assignee not damnified—Burden of proof on assignee, in such a case, to show such value—Assignee has the option to sue on warranty—Or may recover purchase money on the ground of total failure of consideration.*

1. Plaintiff's husband purchased a mortgage of defendant, *assuming to*

act as her agent in so doing, paying the consideration money. He demanded payment of the mortgage debt, and on refusal instituted foreclosure proceedings, employing a solicitor for that purpose; in which suit the bill was dismissed, on proof that the mortgage debt was paid prior to such purchase. He acted with the solicitor in compromising the claim of the wife for damages on account of the breach of the covenant of the assignor that a certain sum was due on the mortgage, and receipted to him, in his wife's name, as agent, for the money paid on such settlement. No *special* authority was shown from the wife to her husband or to her solicitor to compromise or settle said claim, nor was there any evidence to show her knowledge of such settlement or that she received the money paid thereon.

She afterwards brought suit against the assignor on said covenant, and he set up as a defense the aforesaid settlement, and introduced evidence of the foregoing facts as tending to show that the husband was the *general* agent of his wife in making such compromise. On the trial the foreclosure proceedings were put in evidence by the plaintiff to show the breach of defendant's covenant.

*Held,* that by bringing suit on said covenant, and introducing the foreclosure proceedings in support of her claim for damages for its breach, the wife *ratified* her husband's purchase of the mortgage and the proceedings to foreclose the same; but that these acts, standing by themselves, had no tendency to establish the *general* agency claimed, but affected the *purchase* and attempted *collection* of the mortgage *alone.*

2. Authority to *compromise* and *settle* a demand cannot be implied from authority to *collect* and *receive payment* of the same.

3. A solicitor was employed to foreclose a mortgage, and prosecuted the suit to final decree. He afterwards assumed to compromise the claim of the complainant under an assignment of the mortgage, for a breach of a covenant therein contained.

*Held,* that such claim was collateral to and independent of the foreclosure suit, and had he been retained to prosecute a suit for such breach he could not, in the absence of. *special* authority, settle the demand for less than the amount due and payable thereon.

4. The rule is well settled that when a person makes payments upon *non-*negotiable securities to a person *assuming* to act as agent, he should see to it that the securities are in the possession of such alleged agent; otherwise he may be compelled to pay the money over again, unless able to show its *actual* payment to the principal, or the *special* authority of the agent to receive payment.

5. In a suit by a married woman against an assignor of a mortgage, purchased for her by her husband as agent, for breach of covenant, the defendant sought to show a settlement of the demand with such agent, and that he was her general agent, and offered the husband as

a witness for that purpose, his wife not consenting to his being sworn.

*Held*, that he was an incompetent witness under How. Stat. § 7546.

6. In a suit on a covenant by the assignor of a mortgage that nothing had been paid thereon, it appearing that the mortgage debt had been paid at date of the assignment, the measure of damages is the value of the note and mortgage at time of purchase if nothing had been paid thereon; and if it appears that the maker was *irresponsible* and the security *valueless*, plaintiff cannot be held to be *damnified* by such breach. In such a case the burden of proof is on the plaintiff to show such value.

7. Where an assignor covenants that a certain sum is due on a mortgage sold by him, and it appears that the mortgage debt was fully paid at time of such assignment, the assignee has the option to sue upon the warranty, in which action he can recover his *actual* damages, which are measured by the *real* value of the security purchased if nothing had been paid thereon, or he can sue to recover back the money paid, on the ground of a *total* failure of consideration.

Error to Wayne. (Speed, J.) Argued May 6, 1886. Decided June 17, 1886.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion and head-notes.

*W. A. Anger* (*F. A. Baker*, of counsel), for appellant:

The court erred in excluding the testimony of plaintiff's husband to establish the agency claimed. How. Stat. § 7546, was not intended to abolish circuit court rule 48, or chancery rule 99, under which the court may, "in accordance with and for the furtherance of justice, in any suit either at law or in equity, call upon any or all of the parties to such suit, or any witness thereto, to testify," etc.: *Hamilton v. Hamilton*, 37 Mich. 603.

The defendant was entitled to credit for the $334 paid by him. If the solicitor had no authority to compromise the claim, he certainly had authority to collect it, and whatever he received must necessarily be applied on account.

*Griffin & Warner* (*Ormond F. Hunt*, of counsel), for plaintiff:

Persons dealing with one who *assumes* to act as agent for another have no right to rely on his statements as to his

agency, or its extent, but must ascertain the *real* facts from the principal: *Kornemann v. Monaghan*, 24 Mich. 36; *Mc-Donough v. Heyman*, 38 Id. 334.

A *continued* agency is not to be presumed from the fact that one has been *temporarily* employed for *special* purposes: *Campbell v. Sherman*, 49 Mich. 534.

Those dealing with agents of *married* women must inquire into their authority and powers: *Kenton Ins. Co. v. McClellan*, 43 Mich. 564.

One who deals with another, supposing him to be an agent, is not protected by the alleged agent's assumption of authority to act: *Rice v. Peninsular Club of Grand Rapids*, 52 Mich. 87.

The statutory rule (How. Stat. § 7546) that a husband may not testify against his wife without her consent is not waived, in her absence, by the omission of her attorney to object to such testimony: *Hubbell v. Grant*, 39 Mich. 641.

Conceding the authority of the solicitor to foreclose the mortgage, this had no tendency to prove his authority to compromise the claim for damages for breach of warranty contained in the assignment, and his retainer is not presumed to cover proceedings subsequent to the decree: *Ransom v. Sutherland*, 46 Mich. 489.

An attorney employed to enforce a claim has no implied authority to compromise it: *Isaacs v. Zugsmith*, 103 Penn. St. 77; *Dooley v. Dooley*, 9 Lea (Tenn.) 306; Weeks on Attorneys at Law, § 228. And, see *Miller v. Lane*, 13 Bradwell (Ill.) 648; *Close v. Stuart*, 4 Wend. 98.

CHAMPLIN, J. On the eighteenth of July, 1882, the plaintiff purchased of defendant a note and mortgage made and executed by Benjamin M. Knowles, bearing date the fifteenth day of October, 1872, and, on the day first above stated, the defendant executed a written assignment thereof to the plaintiff, which contained the following clause:

" And I do hereby, for myself, my heirs, executors, and administrators, covenant, promise, and agree to and with the said party of the second part that there is now due upon the said note and mortgage the sum of three hundred and eighty-eight dollars, and the interest on the same from the date thereof, as specified in said mortgage." .

Payment was demanded of the mortgagor, who asserted that the note and mortgage were fully paid; whereupon

plaintiff instituted proceedings to foreclose the same in chancery, which resulted in a decree dismissing the bill of complaint upon the ground that there was nothing due or owing upon the note and mortgage.

Alonzo Eaton is the husband of the plaintiff, and was at the time of the transactions above referred to. He negotiated with the defendant for the purchase of the note and mortgage on behalf of his wife. He acted for his wife in demanding payment, and he engaged the solicitor who conducted the proceedings to foreclose the mortgage, and left the note and mortgage with him for that purpose. After the bill was dismissed he directed the solicitor to write to defendant to call and settle upon the covenant contained in the assignment above quoted. Defendant called at the solicitor's office with reference to it two or three times, and there had negotiations with the solicitor and said Alonzo Eaton, who claimed to act on behalf of the plaintiff, and finally a compromise was agreed upon by which defendant agreed to repay the amount received by him on the sale of the mortgage, which was $300, and the interest thereon from the date of the assignment, in full settlement and discharge of his obligation to Mrs. Eaton, and he thereupon paid to Mr. Eaton $334, and received from him the following voucher therefor :

" In consideration of 334 dollars to me in hand paid by William H. Knowles, I hereby agree to discharge, and I do hereby discharge, William H. Knowles from all and every liability incurred by him under assignment of mortgage executed by Benjamin M. Knowles to said William H. Knowles, October 15, 1882, recorded in Liber 156 of Mortgages, page 491, in the office of the register of deeds for Wayne county, Mich., and assigned to me by said William H. Knowles, July 18, 1882; said assignment being recorded in Liber 20 of Assignments of Mortgages, on page 604.

" *Detroit, March* 6, 1883.     ELLEN V. EATON,
" Witnesses : E. T. WOOD.         Per A. EATON, Agt.
         " JAS. O'MELICK."

No *special* authority was shown from Mrs. Eaton to her solicitor or to Mr. Eaton to compromise her claim against

defendant, or to settle the liability of defendant upon the covenants and agreements contained in the assignment. Neither is there any evidence tending to show that Mrs. Eaton had any knowledge of such compromise and settlement, nor that the money paid on such settlement was ever paid over to her.

This suit was instituted by plaintiff to recover the amount due for principal and interest on said mortgage according to its terms, based upon the clause in the assignment above quoted.

The defense rested upon the settlement made by the solicitor and by Alonzo Eaton as the agents of Mrs. Eaton; and the defendant introduced evidence which his counsel claim had a tendency to establish the fact that Alonzo Eaton was the general agent of Mrs. Eaton, and, as such, was authorized to compromise and settle the claim against defendant in the manner it was done.

The testimony which defendant's counsel claim had a tendency to establish the fact of general agency was of the following import:

1. That Mr. Eaton acted for his wife when the mortgage was purchased and assigned to her. Mr. Eaton transacted the business, and paid the consideration of $300 to the defendant.

2. Mr. Eaton demanded payment of the mortgage before commencing suit to foreclose it.

3. Mr. E. T. Wood, the solicitor who foreclosed the mortgage, was employed by Mr. Eaton, who brought the mortgage and note to him, and he had no personal interview with Mrs. Eaton.

4. Mrs. Eaton did not attend the hearing of the foreclosure suit, but Mr. Eaton was there; and these foreclosure proceedings were put in evidence by counsel for plaintiff.

5. The following acts, which occurred after the alleged settlement, were shown:

*a*—Mr. Eaton acted for his wife in procuring a mortgage of $1,000 against the same mortgagor, to accomplish which one or more prior mortgages purchased in like manner by Mrs. Eaton were by her discharged.

*b*—One Adam H. Duggan borrowed $100 of Mrs. Eaton

through her husband, who received payments of interest, and signed receipts: "ELLEN V. EATON, Per A. EATON, Agt."

c—The principal of this loan was paid by Duggan to Mr. Eaton, and Mrs. Eaton discharged the mortgage.

The court held, as matter of law, that this testimony was insufficient to establish the fact that either the solicitor or Mr. Eaton had authority to make the compromise and settlement, and directed a verdict for the plaintiff for the full amount of principal and interest due upon the mortgage.

The testimony showed that Mr. Eaton was the agent of Mrs. Eaton in the purchase of the mortgage in question, and in demanding payment and instituting proceedings to collect the amount due by foreclosure proceedings. No prior authority to do these acts was shown; but as she introduced the foreclosure proceedings in evidence in this case, and has also brought suit upon the assignment of the note and mortgage to her, she ratifies the acts of purchase and foreclosure, and adopts the acts of Mr. Eaton, with respect to those transactions, as her own. These acts of Mr. Eaton, taken with his wife's approval, had regard to the single transaction of purchasing and collecting the note and mortgage in question. Standing by themselves, they had no tendency to prove that Mrs. Eaton had authorized her husband to act as her general agent in the transaction of her business.

Nor is the case strengthened by the facts subsequently occurring, of a loan made to Benjamin M. Knowles of a thousand dollars, in which certain prior mortgages were to be paid and discharged. It appeared that Mrs. Eaton was present during a portion of the time when this money was loaned, and had the money in her own possession, and gave the matter her personal attention, although some of the details were attended to by Mr. Eaton. The receipt of principal and interest from Duggan for Mrs. Eaton had no tendency to prove Mr. Eaton's authority to compromise and settle the right of action against Knowles. There is no authority implied to compromise and settle a demand, from the authority to collect and receive payment of it. All the acts given in evidence were of a special and limited nature, from which an

authority might properly be implied to invest money for, and to collect money due to, Mrs. Eaton ; but these fell entirely short of proving authority from Mrs. Eaton to Mr. Eaton to compromise and settle the demand in controversy. It also appears, inferentially at least, that Mr. Eaton was acting for the defendant in making this compromise, and received from him in the neighborhood of $40 as a compensation therefor.

The compromise cannot be sustained as the act of Mrs. Eaton through her solicitor. It did not occur in the progress of the cause in the foreclosure proceedings. That suit had been prosecuted to a final decree. The action upon the covenants contained in the assignment was collateral, and independent of the foreclosure suit, in which the solicitor had not been retained to prosecute ; and, if he had been retained as attorney to prosecute the defendant upon the covenants of the assignment, he could not, without special authority so to do, compromise and settle the demand for a less amount than was due and payable thereon : *Huston v. Mitchell*, 14 Serg. & R. 307 ; *Fitch v. Scott*, 3 How. (Miss.) 314 ; *Mandeville v. Reynolds*, 68 N. Y. 528 ; *Preston v. Hill*, 50 Cal. 43 ; *Granger v. Batchelder*, 54 Vt. 248 ; *Lewis v. Gamage*, 1 Pick. 347 ; *Nolan v. Jackson*, 16 Ill. 272 ; *Holker v. Parker*, 7 Cranch, 436 ; *Brackett v. Norton*, 4 Conn. 517 ; *Penniman v. Patchin*, 5 Vt. 352 ; *Carter v. Talcott*, 10 Id. 471 ; *Vail v. Jackson*, 15 Id. 314 ; *Simonton v. Barrell*, 21 Wend. 362 ; *Jackson v. Bartlett*, 8 Johns. 362 ; *Isaacs v. Zugsmith*, 103 Penn. St. 77.

The assignment containing the covenant sued upon does not appear to have been in the hands of Mr. Eaton when the compromise and payment were made with and to him ; and the rule is well settled that, when a person makes payment upon non-negotiable securities to a person assuming to act as agent, he should see to it that the securities are in the possession of the person claiming to be agent ; otherwise he may be compelled to pay the same again, unless he can show that the money was actually paid over to the principal, or that the agent was specially authorized to receive payment : Dunlap's

Paley, Ag. 274; *Smith v. Kidd*, 68 N. Y. 130, 138. Had the assignment been present at the time the money was paid over, it is reasonable to infer that it would have been delivered up to the defendant ; but, instead of this, we find it in plaintiff's possession, and produced by her upon the trial.

The defendant placed Alonzo Eaton upon the stand, and sought to make out his defense by his testimony. It was conceded that he was the husband of the plaintiff, and the counsel for plaintiff objected to his being sworn or testifying in the cause, on the ground that he was incompetent to be a witness without the consent of his wife, which was not given. The court ruled that, under section 7546 of Howell's Statutes, he was not a competent witness, and excluded his testimony.

The court was not asked to, nor did he of his own volition, exercise any discretion which might be vested in him in pursuance of section 6424, and the rules of court, to call upon a party to testify for the furtherance of justice, and we are not called upon to decide whether he ought or could, under the circumstances of this case, have called upon this witness to testify in the cause. We are satisfied to leave the ruling, where the court left it, under the prohibition of the statute.

The only other question deserving attention is the measure of damages which should have been given to the jury as the correct basis for a recovery. The court directed them to find for the plaintiff the full amount of the principal and interest due upon the note and mortgage without regard to the amount paid by the plaintiff therefor, or the amount paid by defendant to Mr. Eaton.

That defendant cannot be allowed the amount paid to Mr. Eaton upon the unauthorized settlement is too clear for argument. If he paid the money to a person not authorized to receive it, he must look to that person for it.

The real question is whether the plaintiff is entitled to recover the whole amount of the principal and interest of the note and mortgage, or the consideration money paid and interest. To determine this it is well to keep in view the covenant contained in the assignment, and which lies at

the foundation of the action. It is not a guaranty either of payment or of collection. Defendant did not guaranty either that the maker was solvent or that the security was sufficient. Had there been nothing paid upon the note, the defendant would have incurred no liability whether the plaintiff had ever realized anything out of the security or not. The stipulation amounted merely to a warranty that nothing had been paid upon the note and mortgage. It differs in no respect from warranties upon sales of other personal property, and is governed by the same principles.

The general rule of damages in breach of warranty is the difference in value between the article sold as it actually turned out to be, and as it was represented or warranted to be. Applying the rule to the case in hand, the inquiry would be, what was the value of the note and mortgage at the time they were purchased if nothing had been paid thereon? This would depend upon the circumstances and solvency of the maker, and the further fact as to whether the security was ample; for, if the maker was worthless and the security valueless, it is plain that the plaintiff is not damnified by the breach of the covenant of warranty of the amount due.

The burden of proof was upon the plaintiff to show the jury the value of the note and mortgage, and all the facts and circumstances affecting their value should have been placed before them. Nothing of the kind was done. The court seems to have assumed that, had nothing been paid, the note and mortgage were worth their face value. But there is no such presumption.

When it was ascertained that there was nothing due upon the note and mortgage at the time of plaintiff's purchase, she had the option to sue upon the warranty, in which action she could recover her actual damages, or she could have sued to recover back the money paid, on the ground of a total want of consideration. She chose the former, and must make out her case by proof entitling her to recover the damages occasioned by the breach of warranty. See *French v. Turner*, 15 Ind. 59; *Furniss v. Ferguson*, 34 N. Y. 491;

*Adams v. Bowman*, 51 Mich. 189 ; *Ross v. Terry*, 63 N.Y. 613.

In *Hamilton v. Billingsley*, 37 Mich. 107, a recovery was permitted for the difference between the actual amount represented by the assigned installments, which were fraudulently represented to be due and unpaid, and the amount actually remaining unpaid, and interest. This, under the facts of that case, was in effect permitting a recovery back for that part of the consideration which had failed, or was withheld by the fraud of the assignor.

The judgment must be reversed, and a new trial is ordered.

The other Justices concurred.