Nolan *v.* Jackson.

---

---

BERNARD NOLAN, Administrator, Appellant, *v.* ALEXANDER J. JACKSON, Appellee.

APPEAL FROM JO DAVIESS.

Where an attorney is employed by an administrator to obtain authority to sell real estate, he is not, by force of such employment, authorized to receive the purchase money offered for the estate sold.

He cannot make the sale or receive payment without express authority for those purposes.

An attorney employed to collect a debt can only obtain judgment, have execution issued, receive and receipt for the proceeds ; but he cannot compromise the debt, give day of judgment, receive a less amount or anything but money in satisfaction.

Nolan *v.* Jackson.

THIS cause was tried by SHELDON, Judge, at the March term, 1855, of the Jo Daviess Circuit Court.

A. L. CUMMINGS, for Appellant.

J. A. ROWLINS, for Appellee.

SKINNER, J. Bernard Nolan, administrator of Bernard Nolan, deceased, sued Alexander J. Jackson, in assumpsit, in the Jo Daviess circuit court. The parties submitted the cause to the court for trial. The bill of exceptions shows that the parties agreed that Jackson bought, at public sale, made by Nolan as administrator of Bernard Nolan, deceased, a lot in Galena for the sum of $395; that Jackson has paid Nolan $195, all of the purchase money except $200, and interest on the whole amount. Nolan denies that said $200 have ever been paid to him, or to any person for him authorized to receive the same. Jackson avers that said $300 have been paid. This is the only matter between the parties except interest on said $395.

A deed from Nolan, as administrator of Bernard Nolan, deceased, to Jackson for the lot, was read in evidence. Robert Brond then testified, that he was acquainted with the handwriting of B. D. Jackson, deceased, a brother of Alexander J. Jackson, and that the signature to the paper shown him was in the handwriting of said B. D. Jackson. This paper was read, bore date the 29th of November, 1853, and purported to be a receipt to Alexander J. Jackson for $197.50, half of the purchase money for the lot, and recited that the sale was made on the 26th day of November, 1853, and that said Jackson would be entitled to a deed on complying with the terms of sale, and was signed " B. D. Jackson, attorney for Bernard Nolan, administrator of the estate of Bernard Nolan, deceased." The witness further testified that he sold the lot as auctioneer, for $395, half cash and half in six months, with interest; that the sale was made on the 26th day of November, 1843; that B. D. Jackson employed him to sell the lot as auctioneer; that he made the sale at his request, but did not receive the purchase money; that Nolan and B. D. Jackson were present at the sale; that B. D. Jackson took an active interest in the sale; that B. D. Jackson requested Alexander J. Jackson to go down with himself and Nolan to his office to pay the money; that they altogether went down the street towards said office; that he did not know who received the money; that B. D. Jackson paid him for selling the lot; that said lot was afterwards offered for sale, at the instance of Nolan, on the same terms, and that Alexander J. Jackson appeared and claimed the lot, and gave

notice that he had purchased it, and paid part of the consideration money, but did not state how much; that there was no sale in consequence thereof; that he did not know whether Nolan heard him or not, but Nolan was present and made no objection to the statement of Alexander J. Jackson, that witness knew of; that witness was present at the county court when Nolan objected that the notices of the sale were defective; that Nolan was asked why he had not attended to it himself, and he replied that he had left the whole matter to Mr. Jackson.

George M. Whitehall testified that he was judge of the county court of Jo Daviess county; that B. D. Jackson was Nolan's attorney of record in procuring the decree for sale of the lot; that they were frequently in his office; that after B. D. Jackson's death, B. H. Jackson presented a report of the sale, acknowledging the receipt of the purchase money, which Nolan refused to sign, objecting that the notices of sale were not correct; that witness inquired of him why he did not have them right, and he replied that he had employed Jackson to attend to the whole matter for him. Witness then asked him if he had received the money, and he answered that he had not, that he had not received anything.

R. H. Jackson testified that he saw the money paid by Alexander J. Jackson to B. D. Jackson, and the receipt given; that afterwards Nolan told witness to prepare a deed; that after the death of B. D. Jackson, witness made out a report of the sale, but did not read it to Nolan until he was before the county court because he wanted to hear what he would say about the payment when others were present; that Nolan had never denied the payment of the money up to that time, though never asked the question directly; that Nolan refused to sign the report; that witness was the general law partner of B. D. Jackson during all the time when the said transactions occurred.

The court allowed the amount of the receipt as payment to Nolan, and rendered judgment against defendant below for $8.70. Nolan appealed to this court.

But one question need be determined upon this record: did the court err in allowing the amount of the receipt of B. D. Jackson as payment. B. D. Jackson was a practicing attorney, and as such, procured for Nolan a decree of the county court of Jo Daviess county, authorizing Nolan, as administrator of Bernard Nolan, deceased, to sell real estate of said deceased.

His authority, by virtue of his employment, extended no further than to act as Nolan's solicitor in the proceedings in the county court, obtain the decree, make the report of sale, and obtain a final order of approval. He could not make the sale or receive the purchase money, without further authority from

his client. There is no proof of express authority to receive the purchase money, and none, we think, can be fairly implied from the evidence.

Such authority cannot be assumed in the absence of proof, and it seems to us just as probable, from the whole case, that Nolan knew nothing of the payment to B. D. Jackson, as that he empowered him to receive it.

Even where attorneys are employed to sue for and collect debts of their clients, the attorneys, without special authority, can lawfully do no more than obtain judgment, have execution issued, receive and receipt for the proceeds. They cannot compromise the debt, give day of judgment, receive a less amount in satisfaction, or receive in payment anything but money. *Jackson* v. *Bartlett*, 8 John. 362; *Gorham* v. *Gale*, 7 Cowen, 739; *Brackett* v. *Norton*, 4 Conn. 517; *Lewis* v. *Gamage et al.* 1 Pick. 347; *Lockhart* v. *Wyatt*, 10 Ala. 231.

Judgment reversed and cause remanded.

*Judgment reversed.*