MADDOX, RESPONDENT, *v.* RADER ET AL., APPELLANTS. WILLIAM GADDIS, INTERVENOR.

SHERIFF — *Liability of sureties* — *Chattel mortgage.* — Money received by a sheriff from a sale of chattels under a mortgage containing a clause, authorized by statute, empowering the sheriff of the county to execute the power of sale therein granted, is received by him in his official capacity, and a failure to pay over such money is a breach of official duty for which his bondsmen are liable. (Case of *Vose* v. *Whitney,* 7 Mont. 393, approved.)

SAME— *Sheriff's bonds— Official duty— Action on bond.* —Section 850, fifth division, Compiled Statutes, prescribing, in substance, the conditions of a sheriff's bond, recites among other conditions that he "shall pay over all moneys that may come into his hands as sheriff." In this case the bond omitted such clause, but provided for the "well and faithful performance of all official duties now required of him by law." In an action on the bond for his failure to pay over money received from a sale of property under a chattel mortgage. *Held,* that as the sale of the mortgaged chattels was an official duty, the obligation to pay the money over was clearly within the conditions undertaken by his sureties.

ATTORNEYS AT LAW— *Power at sheriff's sale.* —An attorney at law representing the mortgagees at a sheriff's sale has no implied power to authorize the sheriff to accept credit bids. (LIDDELL, J., dissenting.)

RATIFICATION— *Foreclosure sale.* —Where a sheriff at a chattel mortgage sale sold some of the property for cash and some on credit, without authority, paying to the mortgagees the money received from the cash sales, the acceptance thereof is not a ratification of the credit sales where no conditions were attached to the payment.

PRIORITY IN ACTION ON OFFICIAL BOND— *Intervention.* — Where a chattel mortgage on the same property is given to secure two notes to different holders, due at the same time, and an action was commenced upon the sheriff's bond by one of the mortgagees for official misconduct at the foreclosure sale; *held,* that the mere commencement of the action did not give such mortgagee priority in exhausting the penalty of the bond, and that the other mortgagee was properly allowed to intervene.

INTEREST— *Official bonds.* —In an action on an official bond, where a demand has been made for money due, and payment refused, the sureties are liable for legal interest from the date of such demand, even though the principal with such interest added exceeds the penalty of the bond. (*Jefferson County* v. *Lineberger,* 3 Mont. 231, approved. LIDDELL, J., dissenting.)

*Appeal from Fourth Judicial District, Meagher County.*

On the trial of this action defendants admitted the material allegations of the complaint and voluntarily assumed the burden of proof. . The testimony of defendants was excluded on motion, and judgment was rendered for plaintiffs by BACH, J.

*Max Waterman, Sanders, Cullen & Sanders,* and *H. G. McIntyre,* for Appellants.

The provision of the bond under which the sheriff's bondsmen must be made liable, if at all, reads as follows: "If the said William Rader shall well, truly, and faithfully perform all official duties now required of him by law, and shall truly and faithfully execute and perform all the duties of such office of sheriff required by any law to be enacted subsequently to the execution of this bond, then this obligation to be void, etc." It is under the first clause of this condition that by the judgment of the court below these sureties are held liable, and yet there

is not a syllable in the statute conferring the right on the sheriff to execute the power of sale contained in a chattel mortgage, which requires him to pay over to the mortgagees the moneys received at such sale. The sureties are entitled to stand upon the very letter of their bond. Their liability is *strictissimi juris,* and cannot be extended beyond the scope of their engagements. (*Miller* v. *Stewart,* 9 Wheat. 702; *United States* v. *Boyd,* 15 Peters, 207; *Leggett* v. *Humphreys,* 21 How. 75; *People* v. *Pennock,* 60 N. Y. 421; *Carey* v. *State,* 34 Ind. 105; *Scott* v. *State,* 46 Ind. 204; *Jenkins* v. *Lemonds,* 29 Ind. 294; *State* v. *Givan,* 45 Ind. 267; *People* v. *Moon,* 3 Scam. 123; *Nolley* v. *Callaway Co.* 11 Mo. 447; *City of St. Louis* v. *Sickles,* 52 Mo. 122, 129; *Carpenter* v. *Sloane,* 20 Ohio, 328; *Webb* v. *Anspach,* 3 Ohio St. 526; *Henderson* v. *Coover,* 4 Nev. 430; *Cressey* v. *Gierman,* 7 Minn. 398; *Schloss* v. *White,* 16 Cal. 66.)

If the bond in suit was conditioned as is required by section 850, fifth division of the Compiled Statutes, prescribing the form of a sheriff's bond, it might be that the sureties would be liable for money received on a foreclosure sale under a chattel mortgage, and not paid over by the sheriff to the mortgagee. A provision of the prescribed statutory bond is that he "shall pay over all moneys that may come into his hands as sheriff." There is no such provision in the bond in this case. There is no cause of action against the sureties unless their liability be extended by implication.

The statute (§ 1550, fifth div. Comp. Stats.), after providing that the mortgagor may insert in his mortgage a clause authorizing the sheriff to execute the power of sale therein contained, further provides, that "the sheriff of such county, at the time of such sale, may advertise and sell the mortgaged property in the manner provided in such mortgage." There is nothing said concerning the proceeds of such sale, or what application is to be made of them. In *Vose* v. *Whitney,* 7 Mont. 385–394, it is held that in making the sale the sheriff performs an official duty, and the court says: "Inasmuch as he acted under the requirements of law, he must have been held to have been performing an official duty." As we have already seen, there is no "requirement of law" prescribing how the proceeds of such sale shall be applied, and therefore it must be that in this respect

the sheriff acts as agent. In that case the sureties are not liable. (Herman on Chattel Mortgages, § 216.)

The pleadings and testimony show that the forfeit money paid to the sheriff by Kier under the agreement consented to by attorney Smith was received by the mortgagees, who now propose to repudiate the agreement, without restoring, or offering to restore, what they thus confess to have obtained under it. A principal cannot ratify so much of an agent's contract as results to his benefit, and disaffirm the remainder. (*Drennan* v. *Walker*, 21 Ark. 539; *Seago* v. *Martin*, 6 Heisk. 308; *Fort* v. *Coker*, 11 Heisk. 579; *Newall* v. *Hurlbut*, 2 Vt. 351; *Burgess* v. *Harris*, 47 Vt. 322; *Benedict* v. *Smith*, 10 Paige, 128; *Farmers' L. & T. Co.* v. *Walworth*, 1 N. Y. 433; *Crans* v. *Hunter*, 28 N. Y. 389; *Elwell* v. *Chamberlin*, 31 N. Y. 611; *Fowler* v. *N. Y. Gold Exch.* 67 N. Y. 138; *Corning* v. *Southland*, 3 Hill, 552; *Moss* v. *Rossie L. M. Co.* 5 Hill, 137; *Widner* v. *Lane*, 14 Mich. 124; *Henderson* v. *Cummings*, 44 Ill. 325; *Cochran* v. *Chitwood*, 59 Ill. 53; *Krider* v. *Western College*, 31 Iowa, 547; *Beidman* v. *Goodell*, 56 Iowa, 592; *Roberts* v. *Rumler*, 58 Iowa, 301; *Warder* v. *Pattee*, 57 Iowa, 515; *South. Ex. Co.* v. *Palmer*, 48 Ga. 85; *Hunter* v. *Stembridge*, 17 Ga. 243; *Hardeman* v. *Ford*, 12 Ga. 205; *Menkens* v. *Watson*, 27 Mo. 163; *Joslin* v. *Miller*, 14 Neb. 91; *New England M. I. Co.* v. *De Wolf*, 8 Pick. 63; *Culver* v. *Ashley*, 19 Pick. 300; *Hovey* v. *Blanchard*, 13 N. H. 145; *Tasker* v. *Kenton Ins. Co.* 59 N. H. 438; *Strasser* v. *Conklin*, 54 Wis. 102; *Babcock* v. *Deford*, 14 Kan. 408; *Coleman* v. *Stark*, 1 Or. 115; *Rudasill* v. *Falls*, 92 N. C. 222.)

*Wade, Toole & Wallace*, for Respondent, Maddox.

The law on the subject of mortgaged chattels (§§ 1550, 1551, p. 1072, Comp. Stats.) provides, that it shall be lawful for the mortgagor of goods, chattels, and personal property to insert in his mortgage a clause authorizing the sheriff to execute the power of sale therein granted to the mortgagee; in which case the sheriff, at the time of such sale, may advertise and sell the mortgaged property in the manner provided in the mortgage. This mortgage provided in detail for the disposition of the proceeds arising from the sale of the property, by the application thereof to the

payment of the mortgage debts, etc.   The word "sale," unless otherwise limited, always implies payment in cash (see Murfree on Sheriffs, § 993), and unless an agent have express authority to sell on credit, his authority is always limited to a cash sale. (*State of Illinois* v. *Delafeild*, 8 Paige, 527; Ewell's Evans on Agency, p. 164.)

A sale under the provisions of section 1550, which confers the authority and imposes the duty upon the sheriff as an officer, is expressly distinguished from the "power of sale granted to the mortgagee," and that power of sale granted to the mortgagee, and also imposed as a duty upon the sheriff, is the power to sell and apply the proceeds to effectuate a satisfaction of the mortgage.   The sheriff, with relation to the chattel mortgage, sells, and in the performance of whatever duties the law enjoins upon him with reference thereto, acts in an official capacity.   (*Vose* v. *Whitney*, 7 Mont. 385, et seq.)   The authorities cited by appellants are all cases where the moneys never were received by the officer in an official capacity, and that therefore the bondsmen of the officer could not be held liable for their misappropriation.

Where moneys are received by a sheriff or other officer by virtue of his office, a trust as to their disposition attaches upon their receipt; and the disposition of these moneys in accordance with this necessary trust is one of the primary duties and responsibilities of the officer.   (*State* v. *Rhoades*, 7 Nev. 439; *State* v. *Watson*, 38 Ark. 96; *Maguire* v *Bry*, 3 Rob. [La.] 196.)

The record nowhere discloses an express agreement on the part of attorney Smith to any credit sale.   Such an agreement, if any had been made, without ratification, would be an absolute nullity and void as beyond the general power of an attorney, under which solely, it is conceded, was Smith in this instance acting.   (Freeman on Judgments, § 463, p. 487; *Portis* v. *Ennis*, 27 Tex. 574; *Card* v. *Wallbridge*, 18 Ohio, 411; *Bigler* v. *Toy*, 86 Iowa, 687; *Dickerson* v. *Hodges*, 43 N. J. Eq. 45; *Insley* v. *Disharoon*, Md. June, 1886, 5 Atl. Rep. 468; *Wilson* v. *Jennings*, 3 Ohio St. 528, 539; 2 Greenleaf on Evidence, p. 123; *Savery* v. *Sypher*, 6 Wall. 159; *Carter* v. *Talcott*, 10 Vt. 471; *Stackhouse* v. *O'Hara*, *Exr.* 14 Pa. St. 88; *Nolan* v. *Jackson*, 16 Ill. 272; *Wilson* v. *Wadleigh*, 36 Me. 496; *Wright* v. *Daily*, 26 Tex. 730; *Drain* v. *Doggett*, 41 Iowa, 684; *Lewis*

v. *Gamage*, 1 Pick. 347; *Campbell* v. *Bagley*, 19 La. An. 172.)
The only claim of ratification contended for by appellants is
by virtue of the receipt of so much of the cash as the sheriff was
able at the time to turn over. No presumptive ratification can
arise unless the act and conduct of the principal be inconsistent
with any other supposition. (1 Wait's Actions and Defenses,
p. 234.)

Upon the point that the judgment against the sureties is
greater than the penalty of the bond, it is enough to say that
the excess consists simply of legal interest upon the penalty
named in the bond, from the period when it is admitted that a
demand was made upon the bondsmen to pay the claim. (2
Sutherland on Damages, p. 15, n. 1.)

As this is an action for the independent tort of the sheriff in
failing to pay the Maddox note, Gaddis has no interest in the
subject-matter of Maddox's suit so as to enable him to intervene.
(2 Deering's Code, p. 120, n.; 3 Sutherland on Damages, p. 211;
*Governor* v. *Hicks*, 12 Ga. 190; *Rhoads* v. *Booth*, 14 Iowa, 576.)

*Carpenter, Buck, & Hunt*, for Respondent, Gaddis, in sup-
port of the right to intervene, cited: Comp. Stats. Mont. first
div. § 24; Gen. Laws of Cal. § 5587; Pomeroy on Remedies,
§ 426, et seq.; Jones on Chattel Mortgages, § 49; *Tyler* v. *Taylor*,
8 Barb. 587; *Nowlen* v. *Colt*, 6 Hill, 461; *Page* v. *Pierce*, 26
N. H. 317; *May* v. *May*, 1 Car. & P. 44; *Noyes* v. *Barnet*, 57
N. H. 605.

BLAKE, C. J.— This action was commenced by the respond-
ent Maddox, to recover from the appellants, the sheriff of
Meagher County and the sureties upon his official bond, the
sum of $5,314.69 and interest. Gaddis was allowed to intervene
by the order of the court below, and demanded judgment against
the appellants for the sum of $5,000. It appears from the
transcript that the appellants voluntarily assumed the "burden
of proof, and admitted all the material allegations of the com-
plaint" of Maddox and Gaddis. The following statement of
the facts, which are contained in the pleadings, defines clearly
the nature of the present inquiry: William Rader was the
sheriff of Meagher County in 1887, and the other appellants

executed, in 1886, his official bond in the sum of $5,000. The condition is that Rader "shall well, truly, and faithfully perform all official duties now required of him by law, and shall truly and faithfully execute and perform all the duties of such office of sheriff required by law to be executed subsequently to the execution of this bond." Maddox placed in the hands of Rader, August 9, 1887, a chattel mortgage dated July 9, 1886, and executed by P. D. Kinyon, to secure the payment to Maddox of the sum of $7,313 in one year, with interest, and to Gaddis of the sum of $3,000 in one year, with interest. The property consisted of horses, and the sheriff was directed to take them into his possession and sell the same, and apply the proceeds according to the terms of such mortgage. The officer, between the ninth and thirtieth days of August, 1887, took possession of the property, and advertised it for sale at public auction, and between the thirtieth day of August and the fifth day of September, 1887, sold a large portion thereof for the sum of $10,735. On the last-named date the sheriff released and returned the remainder of the horses then unsold to Kinyon upon the payment of a sum of money, which was sufficient, when added to the amount of said sales, to satisfy the notes of Maddox and Gaddis, which are set forth in the mortgage, and all costs and disbursements arising from the sale. There was due to Maddox, September 5, 1887, the sum of $8,137, and the sheriff paid to him, September 15, 1887, the sum of $2,872.31. Maddox demanded of the sheriff, September 17, 1887, the amount remaining due, $5,314.69, which has not been paid. Copies of the mortgage and bond are made parts of the complaint. The allegations in the pleading of Gaddis show similar facts, so far as the proceedings affect the sheriff. Rader, in his answer, denies that he received any other sum than $4,390.65 at the sale, and alleges that 142 horses were "bid off and knocked down" to A. B. Kier for the price of $8,096.50, in pursuance of an agreement between Maddox and Gaddis and Kier. That Kier paid thereon the sum of $1,752.15, which is included in said amount of $4,390.65, "and was to have the period of five days in which to pay the balance of said sum of $8,096.50; the said Rader to keep and retain the said horses, mares, and colts until the full payment of said sum of $8,096.50, and in the

event of Kier's failure to fully pay said sum, the said $1,752.15 to become forfeited to the use of the said mortgagees, and said horses, mares, and colts to be retained by said Rader for and on account of said mortgagees; and, subject to their orders, the said William Rader retained said sum of $1,752.15, and paid the same over to said mortgagees, it being, as aforesaid, a part of said sum of $4,390.65, and retained in his custody said 142 horses, mares, and colts, subject to the order of the said mortgagees. That afterwards, to wit, on the ———— day of September, A. D. 1887, the said Rader notified the said mortgagees of Kier's failure to pay the balance of said sum of $8,096.50, and notified them that said horses, mares, and colts were then and there held by him subject to their orders; and afterwards, to wit, on the ———— day of September, 1887, on said mortgagees failing to direct what disposition he should make of the same, the said Rader tendered said horses, mares, and colts to said mortgagees, which they then and there refused to receive; and that said Rader, ever since the last-mentioned date, has had, and now has, said horses, mares, and colts in his possession, subject to the order and disposal of said mortgagees. That on, to wit, the fifth day of September, A. D. 1887, P. D. Kinyon, the mortgagor in said mortgage mentioned, tendered and paid to said Rader the sum of $2,459.20, that being the balance due on said mortgage at that time, and demanded the return to him of the property then unsold, which was then held by the said Rader; and that thereupon the said Rader returned to the said Kinyon such unsold property, and paid over to the said mortgagees the said sum of $2,459.20. That the total money so as aforesaid by said Rader received was the sum of $6,849.85. That the costs, disbursements, and expenses in and about said mortgage sale were the sum of $1,445.35, which were paid off and discharged by said Rader; and that said Rader, for and on account of said chattel mortgage, has paid to Fletcher Maddox, mortgagee, the sum of $3,192.93, and to William Gaddis, mortgagee, the sum of $1,591.57. That the foregoing constitute the acts and facts complained of by plaintiff herein." The same answer was filed to the complaint of Gaddis. The replications deny that any agreement was entered into with Kier or the sheriff, through the instructions of the mortgagees, which con-

trolled the sale or disposition of the property. The testimony which was introduced at the trial on behalf of the sheriff and his sureties was excluded, and judgment was rendered by the court for Maddox and Gaddis.

The laws of the Territory provide that "it shall be lawful for the mortgagor of goods, chattels, or personal property to insert in his mortgage a clause authorizing the sheriff of the county in which such property, or any part thereof, may be, to execute the power of sale therein granted to the mortgagee, his legal representative and assigns, in which case the sheriff of such county, at the time of such sale, may advertise and sell the mortgaged property in the manner provided in such mortgage. (Comp. Stats. div. 5, § 1550.) The next section is as follows: "The sheriff making a sale of mortgaged property, as in the foregoing section provided, shall be entitled to receive as his compensation the same fees as upon sales of personal property on execution." (Comp. Stats. div. 5, § 1551.) The chapter governing sheriffs prescribes that "the condition of such bond shall be, in substance, as follows: . . . . That if the said ———— shall well and faithfully perform and execute the duties of the office of sheriff of said county of ———— during the continuance in office by virtue of said election, without fraud, deceit, or oppression, and shall pay over all moneys that may come into his hands as sheriff, and shall deliver to his successor all writs, papers, and other things pertaining to his office, which may be so required by law." (Comp. Stats. div. 5, § 850.) It will be observed that the language of the bond of Rader does not follow the words of the statute. The appellants contend, and it is conceded, that the liability of the sureties cannot be extended by implication, and that they are entitled to stand upon the terms of their written contract. It is further claimed that the omission of a condition respecting the paying over of moneys that may come into the hands of the sheriff, and the failure of the act relating to chattel mortgages to provide therefor, relieve the sureties from all responsibility in this action. Rader accepted the trust that was tendered to him by the mortgagees, and, by virtue of the statute and instrument conferring the authority upon him, took possession of the property, and admits that he received certain sums of money from the sales which have been

mentioned. We are of the opinion that this court, in *Vose* v. *Whitney*, 7 Mont. 393, decided some of these questions, and Mr. Justice McLeary, in construing this law, says: "Under this statute the sheriff took possession of these cattle in his official capacity, and not solely as the agent of either the mortgagee or the mortgagor. He is an executive officer appointed by the law to make the sale of the mortgaged property in compliance with the terms of the mortgage itself. . . . . But inasmuch as he acted under the requirements of the law, he must be held to have been performing an official duty." Let us then gather from the terms of the mortgage the obligations that were voluntarily assumed by Rader at the request of the mortgagees. This instrument empowers the sheriff to sell the property "in the manner prescribed by law, and out of the money arising from such sale to retain the said principal and interest, together with the costs and charges of making such sale, together with an attorney's commission of five per cent; and the overplus, if any there be, shall be paid by the party making such sale, on demand," to Kinyon. It is a presumption of law that the bond of Rader was executed in contemplation of the statute defining the duties of the sheriff in making sales authorized by chattel mortgages. (*Territory* v. *Carson,* 7 Mont. 425.) The obligation to account for and pay over money which may have been received by the officer in the discharge of his public trust is clearly included within the performance of the conditions that were undertaken by the sureties. It was the duty of Rader to comply faithfully with the provisions of the mortgage concerning the payment of the money which he obtained from the sale of the property of Kinyon. This action has been properly commenced against the principal and his sureties, who executed the bond that Rader would perform "all official duties."

Does the evidence tend to prove that the foregoing agreements were made at the time of the sale by the officer, between Kier and the mortgagees? Maddox and Gaddis were not present, and N. B. Smith, Esq., acted and was consulted as their attorney. The appellants insist that Rader accepted the bids of Kier under the contract which was entered into by Smith in behalf of the respondents. A material admission appears in the transcript as follows: "And the counsel for defendant, in open court, stated

that they had no proof to offer, and did not expect to prove any kind or character of special authority in N. B. Smith, and relied solely upon his general authority by virtue of the mortgage having been placed in his hands for foreclosure." The authorities are harmonious in supporting the proposition that an attorney at law has no right to receive anything except money in payment of a debt which has been intrusted to him for collection, without express direction from his client. (2 Greenleaf on Evidence, § 141, and cases cited; *Stackhouse* v. *O'Hara,* 14 Pa. St. 88; *Harper* v. *Harvey,* 4 W. Va. 539; *Smock* v. *Dade,* 5 Rand. 639; *Jeter* v. *Haviland,* 24 Ga. 252; *Miller* v. *Edmonston,* 8 Blackf. 291; *Trumbull* v. *Nicholson,* 27 Ill. 149; *Campbell* v. *Bagley,* 19 La. An. 172; *Wright* v. *Daily,* 26 Tex. 730; *Nolan* v. *Jackson,* 16 Ill. 272.) The respondents did not empower Smith to sell the mortgaged property to any bidder on credit, and are not bound by the action of the sheriff in the arrangements with Kier.

Rader retains, subject to the action of the mortgagees, the horses which were "knocked down" to Kier; and, having treated the bids of Kier as cash, accepted from the mortgagor the sum of $2,459.20 in full satisfaction of the mortgage, and delivered to Kinyon the property remaining unsold. It is not pretended that these acts of the officer were authorized by the respondents, or their attorney, but the appellants say that they have been ratified by the receipt of the amounts arising from the transactions, which are referred to in the answer. The mortgagees demanded from Rader the payment of the principal and interest of the promissory notes made by Kinyon, and refused to take property in lieu thereof. They accepted from the sheriff the sums of money which have been specified in partial satisfaction of their claim against the mortgagor. No conditions were annexed to these payments by Rader, and no fact is pleaded or shown which can be deemed a ratification of his conduct by the respondents.

By a stipulation of the parties, the court heard upon this appeal the arguments of Maddox and Gaddis upon the right of the latter to intervene in the action. They are interested as mortgagees, and hold separate promissory notes, which are payable by Kinyon at the same time, and secured by the same prop-

erty, and no priority is recognized in the mortgage.   Mr. Jones, in his treatise on Chattel Mortgages, says: "Where a mortgage has been given to secure two notes to different holders, and the mortgagees seek to reduce the property to possession by replevin under a clause giving them this right whenever they should feel themselves insecure, they must sue jointly, as they are joint owners." (§ 49, and cases cited; *Noyes* v. *Barnet*, 57 N. H. 605.)   But while the counsel for Maddox admit that Gaddis could intervene in an action for the foreclosure of this mortgage, they assert that this suit is founded on the official misconduct of Rader, and that their client is the first party who is entitled to exhaust the penalty of the bond.   The twenty-fourth section of the Code of Civil Procedure is applicable to this branch of the controversy: "Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter of litigation in the success of either of the parties, or an interest against both.   An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, . . . . or by demanding anything adversely to both the plaintiff and defendant, and is made by complaint setting forth the grounds upon which the intervention rests, filed by leave of the court. . . . ."   Mr. Pomeroy reviews the authorities upon the subject, and concludes: "The intervenor's interest must be such that, if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought." (Pomeroy on Remedies, § 430.)   If the sheriff had performed his duty, and sold the property of Kinyon for cash, the respondents would have been jointly interested in the proceeds.   But under the circumstances attending the case, their sole remedy is against the appellants, and in the absence of an agreement of the mortgagor and mortgagees, or a statute providing therefor, we do not think that the mere commencement of the action by Maddox secured a prior lien upon the bond of Rader.   The court below committed no error in allowing Gaddis to intervene and file his complaint under the provisions of the Code of Civil Procedure, *supra*.

Legal interest was computed upon the penalty of the bond of the sheriff from the time the demand was made for the payment of the money which was found to be due to the respondents, and the appellants remark, in passing, that this action is erroneous. The case of *Jefferson County* v. *Lineberger*, 3 Mont. 246, was brought upon the official bond of a county treasurer to recover a certain amount. This court held that it was the duty of the principal and his sureties to pay the sum for which this officer was liable when he was in default; and that, upon their failure and refusal so to do, the county could institute an action, and collect interest under the laws of the Territory. (Comp. Stats. div. 5, § 1237.) The amount of the penalty in the bond sued on does not limit the responsibility of the sureties in this action. (2 Sutherland on Damages, 15, n., and cases cited.) It is therefore ordered and adjudged that the judgment be affirmed, with costs.

DE WOLFE, J., concurs.

LIDDELL, J. (*dissenting*). The following undisputed facts appear in this case: P. D. Kinyon borrowed $10,313 from William Gaddis and Fletcher Maddox, for which he gave two notes on the 9th of July, 1886 — one to Gaddis for $3,000, and another to Maddox for $7,313 — and on the same day executed a chattel mortgage on a herd of horses, to secure the payment of the notes, and stipulated therein that upon default in the payment the sheriff was empowered to take possession and sell the mortgaged property after five days' advertisement, either at private or public sale, and apply the proceeds to the payment of the mortgaged debt. . Default having been made, the two creditors placed the mortgage in the hands of their attorney, who delivered it to the sheriff, William Rader, with the following indorsement thereon: "To the sheriff of Meagher County, Montana Territory: You are hereby authorized to execute the power of sale contained in certain chattel mortgage, of which within is a true copy. Fletcher Maddox and William Gaddis, by N. B. Smith, their agent and attorney." Under this order the sheriff took possession of several hundred head of horses, and advertised them for sale on the 30th of August, 1887. At

this sale, which was attended by the creditors' attorney, a man by the name of Kier bid off about $1,100 worth of horses, when the sheriff refused to cry his bids any longer. Kier replied that he wished to purchase to the extent of several thousand dollars; that he had $2,000 in bank which he would place in the hands of the sheriff, and also leave any stock which he might purchase in the sheriff's possession until he should pay the balance of the purchase money, which he could readily do in five days. If he failed to comply with his bid the money and horses should be forfeited to the mortgagees. The sheriff referred the matter to the mortgagees' attorney, who, after some discussion, directed the sheriff to proceed with the sale, which was accordingly done. On that occasion Kier continued his bids, and on the day following he was represented by his attorney, one Waterman, who, under a written power from Kier, bid off $1,600 worth of horses for him, making his bid reach about $8,096.50. On inquiry at the bank it was found that Kier did not have more than $1,752, but this was turned over to the sheriff on the second day of the sale, which lasted for five days. Mr. Waterman's bids were on the fifth day, and before they were received by the sheriff he displayed his written power, and again the matter was referred to the creditors' attorney, who, upon being shown that the amount of money already in the sheriff's hands was sufficient to cover any loss and expenses from a resale of the property, said to the sheriff: "It is all right, and you can go ahead with the sale;" and thereupon Waterman made the purchases referred to. Kier's purchases in the aggregate amounted to $8,096.50, and thereafter, the mortgagor having paid the difference between the bids of Kier and the debt and costs, the sheriff released the rest of the mortgaged property. The horses purchased by Kier (142 in number) with the $1,752, remained in the sheriff's hands. Kier failed to comply with his bid, and the sheriff, after paying costs and attorney's fees, apportioned the money in hand between the two creditors; that is, $3,192.93 to Maddox, and $1,591.57 to Gaddis; and also tendered the horses, 142 head, to the mortgagees, who received the money but refused to take the horses, and failed to direct what disposition was to be made of them. Subsequently the sheriff sold 23 head of horses at private sale

for $1.275, from which he deducted costs of herding, breeding, and keeping the same, and tenders the balance, with the horses, if plaintiffs will accept.

Upon this state of facts Maddox instituted suit against the sheriff and his bondsmen, alleging that the sheriff had sold the property for enough to satisfy all claims, and that, after demand, he had failed to pay over the same; wherefore he prayed for a judgment solidarily against both the sheriff and his bondsmen for the balance due him, to wit, $5,314.69, with interest. As the sheriff's official bond is only for $5,000, Gaddis intervened in this suit, and prayed for a like judgment up to the amount due him, to wit, $1,927.18, and that the sum due and recovered on the official bond might be apportioned between the two mortgagees. The sheriff and his bondsmen, in whose custody he placed the horses after the refusal of the plaintiff either to accept or direct what disposition should be made of them, answered, setting up all of the foregoing facts, and again tendering the horses, and setting forth the sale by the sheriff of some 23 head at $1,275, which they also tendered, less the cost of herding, breeding, and keeping, if the creditors will accept. They further aver that the horses are subject to the order and disposal of the creditors.

The demurrer of defendant to the complaints of plaintiff and intervenor is not well taken. Each states a cause of action, and I entertain no doubt of the liability of the sheriff and his bondsmen for any failure to perform his duties. As the sheriff of the county he could not have refused to execute the power of sale at the request of the creditors; and if he neglected to perform the duties incumbent upon him as sheriff, his bondsmen must respond for any damage sustained by either his misfeasance or malfeasance in office, and therefore I think the judge *a quo* correctly overruled the demurrer.

This is a suit against the sheriff for damages in failing to pay over funds; and when Gaddis filed his intervention the plaintiff moved to dismiss the same by striking it from the files, as not stating a cause of action; but the judge *a quo* overruled the same, and upon final trial he gave judgment for the full sum prayed for, and distributing the amount between the plaintiff and intervenor. There is a bill of exceptions to this ruling

taken by the plaintiff, but there is no notice of appeal or bond on his part, and consequently we cannot consider the issues between them.    Neither plaintiff nor intervenor have appealed from the judgment or order, and therefore they are respondents, while the defendants, who are appellants, are not concerned; nor do they complain of the *status* of the case as between the plaintiff and intervenor.   As between co-respondents or appellees there can be no change in a judgment.    To have this court review an order or final judgment as between intervenor and plaintiff the matter complained of must be brought before us by an appeal of one or the other.    I therefore think the questions raised by the motion to dismiss the intervention cannot be heard in this court.

The facts which I have detailed in support of this opinion were all elicited from witnesses upon the trial of this case.    They were incontestably established by the defense, and no effort was made to rebut them; but upon motion all the testimony and evidence upon the part of the defendants was striken from the record, and straightway a judgment was entered against the sheriff and his bondsmen *in solido*, and for an amount in excess of the sum for which the sureties had bound themselves.    So far as the seizing creditor is concerned, the sheriff is the creature of instructions; and when he had received his authority from the mortgagees, either personally or through their agent or attorney, he was to obey all instructions concerning the execution of the writs from them or their attorney, and which did not conflict with the rights of the defendant.    I assimilate the proceedings to sell the mortgaged property through the sheriff to sales by auctioneers.    It is too clear to admit of discussion that the power of a sheriff to sell does not empower him to either sell on credit or upon conditions or contingencies; and it is equally beyond discussion that an attorney at law must have express authority to create a debt or buy property.    But as the sheriff, in making the sale, is under the control of the creditors, or their attorney present, I have no doubt but that it was the sheriff's place to receive and cry the bids of Kier when so instructed by the creditors' attorney; and in view of his employment and profession I do not think that he required any express authority to direct the sheriff to cry what he considered a good bid.    The record does

not show that there were any other bidders at the sale than Kier; and I conclude from the circumstances that the attorney for the creditors thought that it was advantageous to his clients to allow Kier to bid, for the horses still remained in the hands of the sheriff, and the $1,752 deposited with him was considered by the attorney as sufficient to cover the expenses and damages resulting from a resale in case Kier did not comply with his bid, or his clients declined to take the horses. The sheriff is not the guarantor of any one who bids at a sale made by him. If the purchaser declines or fails to comply with his bid, although perfectly solvent, the creditor may have the property resold, and demand the difference from the purchaser, or he may continue the sale of the debtor's property. So we may leave out of view any question of authority to receive the bids made by Kier. The case was one where the purchaser had either neglected or refused to comply with his bid by paying the purchase price. The property was not his until he complied with the terms of the bid, and until he did so it remained the property of the mortgagor. It was not the property of the sheriff, nor did it become that of the creditors, because they had repudiated the agreement of their attorney.

It became the duty of the sheriff, acting as the auctioneer of the plaintiffs, to notify them of the refusal of the purchaser to comply with his bid, and when he did so, and the mortgagees refused to ratify the acts of their attorney by taking the property as their own, they should have directed the sheriff to resell it, and if it had failed to bring the original purchase price, or enough to satisfy the mortgages, they might continue to sell the mortgaged property. It is obvious that they have been in fault in this respect. The horses bid off by Kier do not belong either to them or to the sheriff, but to the mortgage debtor. And the failure of Kier did not obligate the sheriff in any way to pay his bid, any more than it would be obligatory on the sheriff to pay the bids of a purchaser at a sheriff's sale under execution. In this respect there is no fraud charged against the sheriff either by the plaintiff or intervenor. If any one is to blame it is the attorney of the creditors, who, by his repeated directions to the sheriff to proceed with the sale, held himself out as properly empowered by his clients to act in this matter. His clients

might very well decline to become the purchasers of the horses upon the failure of Kier to pay for them, but they cannot escape from the act of their attorney in directing the sheriff to receive Kier's bids. When they did so they should have directed the sheriff to resell the property. The fact that the sheriff released the other mortgaged property after the payment of the difference between Kier's purchase and the amount due, did not have the effect of extinguishing the mortgage or Kinyon's liability. It is the latter's obligation to pay the debt, and if the property in the sheriff's hands is not sufficient, upon a resale of the same, the mortgaged property must pay the balance, and, in default, Kinyon personally. It is not true that Kier paid the $1,752 to the sheriff to cover the amount of his first bid, but the evidence is precise and explicit that he paid the sum after his conversations and understanding with the plaintiff's attorney, present at the sale, to cover any damage and expense which might be occasioned should he fail to pay the rest of his bid within five days.

The case of the plaintiff was completely destroyed by the defendant's evidence at the time of the filing of the motion to strike out. The plaintiff sued the sheriff for failure to pay over proceeds arising from the sale, while the evidence shows that all the money received from the sale had been paid over, and that the purchaser, Kier, had never complied with his bid, but that the property was still in the sheriff's hands. The intervenor's case should also fail because of the same facts, and the additional fact of the defendant's tender of the property which it is claimed that the sheriff has converted. After their attorney had refused emphatically to receive the horses, but demanded the cash, it was a vain and useless thing for the sheriff to continue his tender of the property. Tender is only a protection to one who owes a debt; and what the sheriff terms a " tender" was merely a notice that the property was in his hands, subject to the creditors' orders, for he did not owe the debt. It would be most inequitable to allow the creditors a judgment against the sheriff for the value of horses which he never bought, and holds subject to the order or disposition of the mortgagees.

A thorough examination of the record impresses me with the honesty of the sheriff throughout the entire transaction, and

his constant effort to serve the creditors and collect the debt. The rights of the creditors were never impaired or injured up to the institution of this suit, and the only possible cause of complaint which they ever had was the failure of the sheriff to re-advertise the property bid off by Kier. But when I consider that the horses and the money were tendered to the mortgagees, and that neither of them, nor their attorney, requested or directed a resale, even this cause of action falls to the ground. Perhaps upon a resale of this property it might bring enough to pay the debt. The duty of courts is to do justice between parties, but how could that be done in this instance by giving a judgment against the sheriff? This is a proceeding against him in the nature of damages for failure to do his duty, and if he should satisfy the judgment rendered by the District Court he would not own the horses, nor would he be subrogated to the rights of the mortgagees. To my mind it is plain that the sheriff has not neglected any official duty; that he has paid over all the money collected at the sale; that he is not liable for the failure of Kier to pay his bid; and if the plaintiff and intervenor have not collected their debt from Kinyon, it is their own fault, in not directing the resale of the property purchased by Kier. I conclude that there is neither law nor equity in the creditors' demands; that the striking out of the defendants' evidence was erroneous, and the judgment for plaintiff and intervenor on motion should be reserved, reserving to the plaintiff and intervenor their right to resell the horses bid off by Kier, and also their rights against the sheriff for any damages which may accrue to them for his failure to produce the same, or account for the proceeds of those horses he may have sold since the sale, September 5, 1887. For whatever damages the sheriff may occasion by his acts he is responsible personally, but his sureties are only bound to the extent of the amount named in their bond, and therefore the judgment is erroneous in condemning the sureties to pay any sum in excess of $5,000, the penalty named in the bond. For these reasons I dissent from the opinion of the majority of the court in this case.