(*) WILSON *versus* WADLEIGH & *al.*

An attorney, in virtue of his general employment to prosecute a suit, has no authority to *discharge* the judgment or execution which he may recover, unless upon the payment of the amount due.

Neither has he authority to *assign* the judgment or the execution. An assignment made by him could confer no rights upon the assignee.

A discharge of the execution by such an assignee can therefore impair none of the rights of the plaintiff in whose behalf the judgment was recovered.

ON REPORT from *Nisi Prius*, APPLETON, J. presiding.

DEBT on judgment, recovered in 1847, against J. Wad-

leigh, I. Wadleigh and James Purington, jr., for $541,77.
Jewett & Crosby were the plaintiff's attorneys of record in
obtaining the judgment. The death of Purington having been
suggested, the writ was amended by striking out his name.

The defendants put into the case, the execution issued
upon that judgment. Upon the back of it was the following
indorsement: —

" In consideration of four hundred dollars, we hereby as-
sign and transfer the within execution to E. D. Hoskins,
with all the rights and powers belonging to the same.

                     " *Jewett* and *Crosby*, Att'ys for Wilson.
 " December 8, 1847."

The defendant also introduced a discharge of the execution
by Hoskins, dated April 1, 1850.

The defendants also put in the writ in the case, *Jewett &*
*al.* v. *Wadleigh & al.*, reported, 32 Maine, 110. By agree-
ment, all the papers referred to in that case are to be consider-
ed as in this case.

The defendants called a Mr. Crosby as witness, who testi-
fied that after Ira Wadleigh had paid to Jewett, one of the
plaintiff's attorneys, the $400, Jewett and Wadleigh had a
conversation about Purington's liability to pay a portion of
the demand, and the assignment was made for the purpose of
enabling Wadleigh to collect of Purington. Wadleigh pre-
ferred that mode in preference to having it discharged, and
Jewett wrote something on the execution.

The case was submitted to the Court for a decision as the
legal rights of the parties may require.

 . *Rowe & Bartlett*, for the plaintiff.

The assignment of the execution is void, Jewett & Crosby,
the attorneys, having no power to make it.

 . Parol evidence is not admissible to show, that this assign-
ment was intended to operate as a discharge, and not as an
assignment. 7 Maine, 435; 14 Maine, 335; *Osgood* v. *Da-*
*vis*, 18 Maine, 146; *Jewett* v. *Wadleigh*, 32 Maine, 112.

 . The memorandum given by the defendants to Jewett &
Crosby, shows that the execution was not discharged; nor in-

tended to be, except on the performance of certain conditions on the part of the defendants, which have not been performed. *Jewett* v. *Wadleigh*, cited above.

Cutting, for the defendants.

On Dec. 8, 1847, in consideration of $400, paid and secured by defendants, the judgment was either discharged or assigned to E. D. Hoskins.

If discharged, then the plaintiff has no cause of action. —

For by statute c. 213, (Approved June 3, 1851,) § 1, it is enacted, that "no action shall be maintained in any Court of this State, on any demand or claim, which has been settled, canceled or discharged by the receipt of any sum of money less than the legal amount due thereon, or for any good or valuable consideration, however small, by the owner thereof, or by his agent or attorney to whom the same has been entrusted for collection or settlement, whether such agent or attorney be generally or specially authorized."

The present action was commenced Sept. 1, 1851, after the passage of the Act.

Mr. Crosby's testimony shows, that the assignment was made to enable Wadleigh to collect of Purington, and that Wadleigh preferred that mode, rather than a discharge, and that thereupon Jewett wrote something on the execution.

That something, turns out to have been an assignment to E. D. Hoskins, but solely for the benefit of Wadleigh.

Thus, from the testimony of Crosby and the act of Jewett, the conclusion cannot be otherwise, than a design to exempt Wadleigh from the payment of the execution, which in the language of the statute, so far as it regards him, was settled, canceled or discharged.

In the case, *Jewett & al.* v. *Wadleigh & al.*, 32 Maine, 110, the decision is based principally on the consideration that, *as the law then was*, an attorney was not authorized to receive a less, in payment of, a larger sum.

It would seem that the agreement to Jewett & Crosby, under the circumstances, was made in order to uphold the execution for Wadleigh's benefit; for all the parties then must

have contemplated that the cash and notes secured by E. D. Hoskins was to be in full, which notes were paid though not promptly. All the damages recoverable was the interest on the notes after they became payable, which the plaintiff has received.

That agreement says that the execution was "settled." "Whereas, we have *settled* an execution," is the language.

Crosby swears to the same effect, that at Wadleigh's request, there was a transfer instead of a discharge.

*Rowe*, in reply.

The testimony of Crosby was inadmissible. The matter was not for the jury. It is merely a report to be decided on the parties' legal rights. Inadmissible testimony, then, is not to have influence.

Our objection is, that it was introduced for an unallowable purpose.

The statute cited by the counsel can have no effect here. It is not to operate retrospectively.

APPLETON, J. — It appears in evidence that Messrs. Jewett & Crosby, the attorneys to the plaintiff, upon receiving notes for an amount less than the sum due, assumed to assign the judgment, on which this suit is founded, to one Hoskins, by whom the same was subsequently discharged. The defence, therefore, mainly rests on the right of an attorney, without special authority, to assign a demand left with him for collection.

An attorney cannot, by virtue of his general character as such, discharge a defendant from custody on execution, without satisfaction. *Kellog* v. *Gilbert*, 10 Johns, 229. He cannot commute a debt, or materially change the security which his client may have, without his assent. *Smoch* v. *Dade*, 4 Rand, 639. Nor can he, by virtue of his retainer to prosecute or defend a suit, release a claim of his client on a third person, for the purpose of making such person a witness for him. *Shores* v. *Caswell*, 13 Met. 413. So, too, he cannot, in virtue of his general employment, discharge an execution in favor of his client, unless upon payment of the

amount due. *Jewett* v. *Wadleigh,* 32 Maine, 110. He is necessarily vested with great discretion in the management of a cause during its progress to final judgment, but he is not authorized to assign or transfer that judgment when obtained. Such authority is not necessary for the discharge of his duty, and would leave the interests of his client to his mercy. In *Penniman* v. *Patchin,* 5 Ver. 352, Phelps, J., says, "he cannot compromise a demand without special authority for that purpose, nor discharge it without satisfaction. Much less can he assign it for his own benefit; such an act being not only foreign to the purpose of his employment, but inconsistent with it. A power so liable to abuse, (which indeed could hardly be exercised without abuse,) can with no propriety be admitted." The assignment to Hoskins gave him no title to control the execution, and the rights of the plaintiff remain unaffected by his acts as assignee.

The counsel for the defendant rest their defence on statute c. 213, approved, June 3, 1851, which enacts that "no action shall be maintained in any Court of this State on any demand which has been settled, canceled or discharged by the receipt of any sum of money less than the legal amount due thereon, or for any good or valuable consideration, however small by the owner thereof or by his agent or attorney to whom the same has been entrusted for collection, or settlement whether such agent or attorney be generally or specially authorized." But the case, as now presented, is not embraced, by the provisions of this statute. The execution was not in fact, nor was it intended to be discharged by Messrs. Jewett & Crosby. It appears from the testimony of Mr. Crosby, that the assignment was made to Hoskins, who was surety on the notes given at the time of the transfer, to enable him to collect the execution of Purington, one of the original defendants. The assignment to Hoskins, as has been seen, was utterly void. As he was neither the owner, nor agent or attorney, as he was neither generally nor specially authorized to act in the matter, his alleged discharge can be no bar to the further prosecution of this suit.

Nor is the defendant in a condition to invoke the aid of the contract of Dec. 8, 1847, which was before the Court in *Jewett* v. *Wadleigh*. 32 Maine, 110.

If that were to be considered as a settlement and not an assignment, still it was upon conditions with which the defendant has never complied. He cannot claim the benefit of its provisions and repudiate the terms upon which it was made. By that settlement, if such it were to be deemed, the notes then given were to have been paid at maturity, and if not so paid, the balance was to have been paid to the attorneys of the plaintiff. To entitle the defendant to the deduction then made, the amount agreed upon was to have been punctually paid. As the defendant has successfully defended against that contract, on the ground of want of authority in those with whom it was made, he is not now in the most favorable position to assert its existence.

The plaintiff is entitled to judgment for what may be due after deducting such payments as may have been made.

*Defendant defaulted.*

Shepley, C. J., and Tenney, Rice and Hathaway, J. J., concurred.