Benjamin M. Trumbull, Plaintiff in Error, *v.* Aaron B. Nicholson, Defendant in Error.

### ERROR TO SANGAMON.

An attorney has no power to receive depreciated money, in satisfaction of a judgment.

If an attorney should accept from the sheriff depreciated money, in satisfaction of an execution, the owner of the judgment is not bound by such acceptance; and may compel the sheriff to return the amount in legal currency. If the sheriff has been injured by the conduct of the attorney, he must look to him for redress.

An assignment of a judgment, is a revocation of the authority of the plaintiff's attorney to receive the money on the execution, or to control the judgment.

THE plaintiff in error moved the Sangamon Circuit Court for a rule upon the defendant in error, who was the sheriff of Logan county, to return an execution in his hands, in favor of the plaintiff in error and against one Thomas G. Taylor—which rule being granted, and the execution returned, indorsed, "satisfied in full," a motion was entered at the same term, for a rule upon the sheriff to bring into court the money made on the execution.

The facts upon which this motion was based, are fully stated in the opinion of the Court.

The court ordered the sheriff to bring or return into court the money collected on the execution, or pay it to the plaintiff, except the amount of the two checks (which was $231) sent by the sheriff to Zane. To which decision the plaintiff in error excepted, and brings the case to this court.

W. H. Herndon, for Plaintiff in Error.

J. C. Conkling, for Defendant in Error.

Caton, C. J. Even if we should come to the conclusion, that the attorney was authorized to receive depreciated bank

bills, in satisfaction of the judgment, without special authority so to do from his client or the owner of the judgment, and that what he did was an acceptance of the currency and check in satisfaction, still the court should have ordered the sheriff to bring the whole into court, for it was at the bank, under his control, and only through him could the judgment debtor touch it. This was so, as much in regard to the proceeds of the check as in regard to the currency, which the court did order him to bring in, so that the order should have covered the whole or nothing. But we do not think the attorney was authorized to receive the funds, sent by the sheriff, in satisfaction of the execution. The facts are these:

Zane, an attorney at law at the city of Springfield, obtained a judgment in the Sangamon Circuit Court, at the October term, 1860, for Benjamin M. Trumbull, against Thomas G. Taylor, upon which an execution issued, which was received by the sheriff by mail from Zane, in December of the same year. Zane states, in his affidavit, that about the first day of April, 1861, Benjamin M. Trumbull, the plaintiff in the judgment against Taylor, informed him that he had sold the judgment to his brother, Lyman Trumbull, and that the same, with the execution, would from that time be subject to Lyman's control, and that Lyman would receive the money on the same. Lyman also informed him the judgment was his.

Zane also states, in his affidavit, that on the sixteenth day of May, 1861, about five months after the execution had been placed in the sheriff's hands, and about a month and a half after he was informed the plaintiff had sold the execution to his brother, a package was delivered to him, by the United States Express agent, at Springfield, Illinois, which he found to contain said execution, one hundred and twenty-five dollars, in bank notes, and two checks for current bank notes on the Springfield Marine and Fire Insurance Bank, amounting to $231, making in all the sum of $356, being the amount of the judgment and costs; and being unable to find Trumbull, he took ·the package to the bank, on which the checks were drawn, and· the cashier counted out the bánk notes on the checks. Upon further inquiry for Trumbull, he was informed that he was absent from the city, and would return on the night train, but that he deposited at Bunn's bank. Zane then went to the bank, and was there informed that he did not deposit there, and that bank notes would not be taken on general deposit, except from a regular depositor. Banking hours being about to close, he left the package containing the execution and bank notes, for safe keeping until morning, at the bank. Before banking hours, on the next morning, he saw

Trumbull, who demanded the specie in satisfaction of the execution, and refused to receive bank notes. He then went to Bunn's bank, and as soon as it was open, got the package containing the execution and notes and took it to the Springfield Marine and Fire Insurance Bank, and proposed to return the currency he had received on the checks the preceding evening; which the cashier refused to do, and said it was the only currency the bank would pay out on them; and that the bills were current, and that he could not return the check.

Zane then put the execution and the bank notes in an envelope (both those he had received from the sheriff, as well as those paid on the checks) and sent the package to said sheriff by the first express returning to Logan county after he had received it, being on the first morning subsequent to the evening he had received it; and on the next returning express it was returned by the sheriff to him. He then took the package containing said execution and bank notes from the express agent, and deposited it in the Springfield Marine and Fire Insurance Bank, subject to the order of the sheriff of Logan county, and immediately wrote to the sheriff, informing him that he had deposited the package sent him by the sheriff in said bank, subject to his order, and that the said sheriff could get the same whenever he desired, and that he (Zane) would have nothing further to do with it. To which letter he received an answer from the sheriff, duly acknowledging the receipt of the letter; since which time he has seen nothing of the package.

The assignment of the judgment, notice of which was given to the attorney, was undoubtedly a revocation of his authority to receive the proceeds of the execution. If his principal had parted with the right to control the judgment, it can hardly be questioned that the power of the attorney closed with it. And he seems to have received no new power or employment from the assignee of the judgment. But admitting that he retained all his original powers, yet he was not authorized to receive anything but money, or at least that which was equivalent, and actually treated as coin, in satisfaction of the judgment. This principle has been recognized by this court, in the case of *Nolen* v. *Jackson*, 16 Ill. 272, and it is a principle indispensably necessary to the protection of parties against the imprudence or the misconduct of the attorney. The attorney might as well take cattle or corn, as anything but money, or he might take less than the amount of the judgment, in full satisfaction, as to take depreciated currency. If the sheriff had been injured by what the attor-

ney did, he must look to the attorney for his indemnity. As in doing that act, if it could be construed into a receipt of the currency and check, in satisfaction of the judgment, he exceeded his authority, he must bear the responsibility of the act, instead of his client. The rule should have been made absolute, for the full amount of the judgment. The judgment is reversed, and the cause remanded.

*Judgment reversed.*