### William C. McClintock

*v.*

### George H. Helberg.

*Opinion filed November 1, 1897.*

1 Attorneys at law—*attorney has no implied authority to materially lessen client's security.* An attorney cannot, without special authority from his client, accept security for his client's claim of less value than that already held, and if the debtor neglects to investigate the extent of the attorney's authority he deals with him at his peril.

2. Same—*acts of attorney so unreasonable as to imply bad faith operate as notice.* Unauthorized agreements made by an attorney which are so unreasonable as to imply bad faith will operate as notice of such bad faith to the parties with whom he deals, and will not bind his client.

3. Payment—*party paying note claimed by different persons acts at his peril.* One paying a note to a party who had brought suit to recover upon the same at law, acts at his peril, where, at the time of payment, an appeal, of which he has notice, is pending in a chancery suit brought against him by another party to establish his right to the same note.

*McClintock* v. *Helberg,* 64 Ill. App. 190, affirmed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. John Barton Payne, Judge, presiding.

This case is now before this court for the second time. The decision of it, when it was here the first time, is reported as *Helberg* v. *Nichol,* 149 Ill. 249. The main facts, and the details of the facts, together with the points involved, are fully set forth in *Helberg* v. *Nichol, supra.* Only such of the facts will be re-stated as are necessary to understand the case as now presented.

On October 1, 1890, the present appellee, Helberg, being the owner of seventy-four acres of land in Cook county, made a contract, dated November 13, 1890, for the sale thereof to one T. S. Kintz, which contract was subsequently assigned to one Arthur Kintz, the latter being an unmarried man. In pursuance of such contract of sale, appellee executed a deed, dated November 26, 1890, conveying said land to Arthur Kintz. The sale to Kintz was negotiated by a real estate firm named Nichol & Ryder, who were assisted in making the sale by another firm named Hartman & Carey. The sale to Kintz was for $275.00 per acre, amounting to $20,350.00. Of this amount $1000.00 was paid to appellee in cash, $8250.00 was paid on or about December 1, 1890, and Kintz, the supposed purchaser, assumed a mortgage then resting

upon the land of $11,100.00. It turned out that the sale was actually a sale to the appellant, William C. McClintock, for $335.00 per acre, or $24,790.00 altogether. Kintz was not a *bona fide* purchaser. The agents made use of his name merely for the purpose of passing the title to the appellant, McClintock. Appellee was made to believe, that he was selling the property to Kintz for $20,-350.00, and for some time did not know of the sale to McClintock. A deed, purporting to be executed by Kintz, was made of the premises to McClintock, and a contract for the sale of the same by Kintz to McClintock was made about the same time, at which the contract between appellee and Kintz and the deed from appellee to Kintz were executed. The appellant, McClintock, actually paid to the agents above named or some one or more of them, $9250.00 in cash, which was turned over by the agents to appellee as having been paid by Kintz. McClintock, in addition to paying the sum of $9250.00 in cash, and assuming the mortgage of $11,100.00, was liable for the further sum of $4440.00. Of the latter amount he paid to Hartman $750.00, or agreed to pay the same; and he gave a note for $3690.00, dated November 26, 1890, signed by himself, and payable on or before April 1, 1891, to the order of T. S. Kintz, secured by a trust deed upon the property. The object of the original bill in this case, filed by the present appellee, was to reach said note for $3690.00, and the trust deed securing the same, and also said sum of $750.00, which were made to appear to belong to Kintz, but which were actually intended to be for the benefit of the agents, making the sale and using Kintz as a mere dummy.

When the cause came on for hearing in the Superior Court of Cook county in February, 1892, the bill was dismissed, and the injunction theretofore granted in the cause was dissolved. Upon appeal to the Appellate Court this decree of dismissal was affirmed. Upon appeal, however, to this court, it was held that the complainant be-

low, the present appellee, was entitled to recover said sum of $750.00 and said note for $3690.00, and the trust deed securing the same, and that the Superior Court had erred in dismissing the bill.    Accordingly, by the judgment of this court in *Helberg* v. *Nichol, supra,* the judgment of the Appellate Court and the decree of the Superior Court were reversed, and the cause was remanded to the Superior Court.

When the cause was re-docketed in the court below, the defendant, McClintock, the present appellant, obtained leave to file, on February 18, 1895, a supplemental answer.    The facts set up in this answer are substantially as follows:  After the Superior Court had announced its decision to dismiss the bill, but before it entered the decree of dismissal, the solicitor for Hartman approached the solicitor of appellee, Helberg, and proposed to execute a bond which is hereinafter described.   Application was made to the Superior Court by appellee's solicitor to continue the injunction.    That court refused to enter an order continuing the injunction, but postponed the entry of the decree of dismissal, in order to give appellee an opportunity to apply to the Appellate Court for a continuance of the injunction.    Appellee's solicitor, however, concluded not to apply for a continuance of the injunction.    The bond in question was executed by Isaac A. Hartman, one of the said agents and one of the defendants below, as principal, and Valentine G. Hunt, as surety, and was delivered to the solicitor of appellee.   The bond bears date February 24, 1892, and is in the penal sum of $4500.00.   By its terms, Hartman and Hunt are bound unto George H. Helberg in said sum of $4500.00.   The condition of the bond is as follows:  "The condition of the above obligation is such that, whereas, heretofore, and on the 6th day of December, 1890, the said George H. Helberg exhibited his bill in chancery in the Superior Court of said county, against the above named Isaac A. Hartman and others, in case No. 130,498, and obtained an injunction

therein restraining the said defendant from collecting, paying, or in any manner interfering with a certain promissory note and trust deed, in said bill set forth and described, which injunction is about to be dissolved by said court. Now, therefore, if the prayer of said bill shall, upon final decree therein, be denied, and the said bill dismissed by the court, then this obligation to be void; but if said prayer shall to any extent be granted, and in said final decree the court shall decide that the said Helberg is entitled to the relief there sought, then in that case the said Helberg shall be entitled under this obligation to be paid not only the amount of said note, but also the further sum of seven hundred and fifty dollars ($750)."

The supplemental answer sets up, that this bond was executed and delivered to appellee's solicitor in pursuance of an agreement with the latter, that the injunction was not to be continued; and that the trustee was to be authorized to discharge and release the trust deed; and that appellant was to be released from any liability to appellee by reason of the pendency of the suit. It is averred in the answer, that this bond was accepted by appellee as a release and discharge of appellant from any liability to appellee to pay said money and said note. Said answer further avers, that, on September 22, 1892, a suit was commenced in the circuit court of Cook county by Meta D. Hartman, who was the wife of the defendant, Hartman, upon said note against the appellant, McClintock, who was served with process therein; and that appellant, said McClintock, settled said suit by the payment of said note and interest, and that said suit was dismissed on December 1, 1892. The answer avers, that the bond was given as a new and substituted obligation for the amount, which appellant still owed upon the purchase price of the land, and that after its delivery and acceptance appellant was released.

It should have been stated, that the note and trust deed were deposited in escrow with one F. C. Kuhns to

be held by him, until McClintock should consent to the delivery of the same. The trustee in the trust deed was one James L. Clark.

The prayer of the original bill was, that the note for $3690.00 should be assigned and delivered to appellee, and that appellant should be decreed to pay to appellee the $750.00 with interest. The injunction granted restrained the parties from endorsing or disposing of said note or releasing said trust deed.

Upon issue made by the supplemental answer, testimony was taken; and, after hearing had, a decree was entered on January 9, 1896. This decree was in favor of complainant below, the present appellee, and was in obedience to the decision of this court, which held that complainant was entitled to the said note and trust deed for $3690.00 and said sum of $750.00. Said decree ordered, that appellant and Hartman should pay the said sum of $750.00 with interest to appellee, and should deliver to him, with proper assignment to convey the legal title, said note for $3690.00 within ten days, and, in default thereof, that a master in chancery should execute a proper assignment of said note to appellee. It was further ordered by said decree, that the endorsements of payments upon the back of said note should be set aside and annulled, and that the release in writing executed by the trustee, James L. Clark, of the property described in said trust deed should be set aside and canceled.

The Appellate Court has affirmed the decree so entered by the Superior Court on January 9, 1896. The present appeal to this court is prosecuted from such judgment of affirmance entered by the Appellate Court.

James L. Clark, for appellant.

Winfield S. Coy, and George L. Thatcher, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

This court has decided, that the appellee was entitled to the relief prayed for in the original bill, that is to say, that he was entitled to have paid to him by appellant the $750.00 of purchase money, and to have transferred to him said note for $3690.00, and the trust deed securing the same. The question then arises, whether the facts set up in the supplemental answer constitute a defense against the granting of the relief prayed for in the bill. Appellant contends, that appellee released his right to the $750.00 and to the note for $3690.00 by accepting the bond for $4500.00. Appellee claims, that the bond never was accepted as a release or discharge of appellant from his liability to pay the $750.00 and the note of $3690.00 to appellee. Upon this question of fact there is a sharp conflict in the testimony. The testimony of appellee tends to show, that the consideration, for which the bond was given, was merely that appellee should take no steps to apply to the Appellate Court for a continuance of the injunction; and that neither appellee, nor his solicitor, ever intended to release appellant from his obligation to pay the note and money to appellee, or ever intended that the note should be paid to the defendant, Hartman. Upon this question of fact the lower courts have decided in favor of appellee. After a careful examination of the evidence, we are unable to say that the finding of the lower courts is against the weight of evidence, and therefore decline to disturb it.

The bond was never delivered to the appellee. It was executed and handed to appellee's solicitor before appellee knew anything about it. It was some time after the delivery of the bond to his solicitor before appellee knew, that any such bond had been executed or delivered to his solicitor. None of the transactions in reference to the bond took place between any of the defendants and appellee, but only between the defendant, Hartman, or

his solicitor, and appellee's solicitor.   Appellee's solicitor told him a few days after the execution of the bond, that such a bond had been executed, but, in connection with this statement, he told appellee that it was not necessary to continue the injunction in the Appellate Court, as the note was overdue, and the pendency of the suit was a sufficient protection.   He told appellee, that the solicitor on the other side had left the bond with him, and that he did not know whether it was of any account or not, but that he considered it an additional security; and that appellee had lost nothing by its delivery, but had gained a point.   Appellee's solicitor swears, that he did not tell Helberg that appellant was released by the taking of the bond, or that anybody was released or discharged thereby.   It is furthermore established by the testimony, that, before Mrs. Hartman began suit against appellant upon the note, appellant caused application to be made to appellee to release some of the property covered by the trust deed, and appellee declined to do so.

There is no evidence whatever in the record, that appellee ever authorized his solicitor to accept this bond as a substitute for the liability of appellant to pay the $750.00 to appellee, and to pay to appellee the amount due on the note for $3690.00.   Furthermore, there is no evidence in the record, which at all establishes the fact, that appellee ratified, or in any way approved, of the taking of said bond as a substitute for such liability, and as a release of appellant, even if his solicitor had agreed to take it as such substitute or as such release.

An attorney has no authority, by reason of his general retainer in a suit, to discharge a debtor to his client, or to accept anything other than money in payment of his client's debt.   He must have special authority from his client to settle a debt due to the client otherwise than by the payment of money.   (*Trumbull* v. *Nicholson*, 27 Ill. 149; *Nolan* v. *Jackson*, 16 id. 272; *Wetherbee* v. *Fitch*, 117 id. 67). An attorney has no power, without express authority,

to bind his client by a compromise of a pending suit, or other matter, intrusted to his care. An executory agreement to compromise a suit, made by an attorney, does not bind the client, unless the latter ratifies such agreement after full knowledge of all the facts. The attorney has no implied authority to compromise his client's claim, or to release his client's cause of action. He cannot bind his client by any act, which amounts to a surrender, in whole or in part, of any substantial right. He cannot commute a debt, or materially change the security, which his client may have, without his consent; nor has he the power to assign or sell a claim or judgment of his client without special authority. (3 Am. & Eng. Ency. of Law, —2d ed.—pp. 358-360, 363; Mechem on Agency, sec. 813; 2 Greenleaf on Evidence, sec. 141; *Penniman* v. *Patchin*, 5 Vt. 346; *Benedict* v. *Smith*, 10 Paige, 126; *Smock* v. *Dale*, 5 Rand. 639; *Wilson* v. *Wadleigh*, 36 Me. 496; *Chapman* v. *Cowles*, 41 Ala. 103; *Wadhams* v. *Gay*, 73 Ill. 415). Where an attorney, in making an agreement with the opposite party, compromises a claim for less than the amount due, or takes security of less value than that which already secures the claim, or accepts anything other than money in payment of the claim, such party is put upon inquiry as to the attorney's authority to make such compromise or settlement; and, if he omits to make inquiry, or to demand the production of the authority, he deals with the attorney at his peril. (*Brooks* v. *Kearns*, 86 Ill. 547; *Miller* v. *Lane*, 13 Ill. App. 648; Weeks on Attorneys, sec. 240; Wharton on Agency, secs. 580-583; *Campbell's Appeal*, 29 Pa. St. 401).

In the case at bar, appellant charges, that appellee's solicitor surrendered a claim for $750.00 against appellant who was a responsible party, and a note for $3690.00 secured by a trust deed upon land which was worth much more than the amount of the note, in exchange for a bond which was, to say the least, of very doubtful value. The transactions in regard to the bond were made out of court,

and were not a part of the record in the pending suit. Appellant was bound to know, that appellee's solicitor had no right to make any such surrender without special authority from appellee. Appellant should, therefore, have inquired as to the authority of the solicitor to make the arrangement; and, after it was made, it was his duty to inquire whether or not it had been ratified and accepted by appellee. When he applied to appellee for a release of the property covered by the trust deed and was met with a refusal, he was put upon his guard and was virtually informed, that appellee had not accepted the bond as a release of his liability. In addition to this, it is in proof, that, when appellant was sued upon the note by Mrs. Hartman, appellee's solicitor advised him to defend against the suit, upon the ground that, if he paid the note to Mrs. Hartman, he might be obliged to pay it again to appellee.

Moreover, if appellee's solicitor surrendered this note and trust deed in exchange for this bond, the former was a security so much more valuable than the latter, as to render such solicitor liable to the charge of bad faith. It is a well settled rule, that agreements by an attorney, which are so unreasonable as to imply bad faith, will operate as notice of such bad faith to the opposite side, and will have no binding effect upon the client. (*Ball* v. *Leonard,* 24 Ill. 146; Weeks on Attorneys, sec. 220).

It is not altogether clear, that the note sued upon by Mrs. Hartman was actually paid by appellant. The suit brought upon the note could have been defended by appellant. The note was never in the possession of Mrs. Hartman, and the suit, though brought in the name of Mrs. Hartman, was really a suit by Hartman himself. Appellant was advised by his own attorney, that he had a good defense to the suit. It appears, that appellant had some claims against Hartman growing out of old transactions. Hartman had sold some property for him, and failed to pay over some of the money due on account of

such sale. The larger part of the payments made upon the note consisted of an application upon the note of these old claims against Hartman. There was thus an inducement on the part of appellant to regard Hartman as the owner of the note, in order that, by such application, he could secure payment of these other claims. Certainly he well knew, that the note and trust deed were claimed, on the one side by appellee, and on the other by Hartman. He owed the debt due upon the note, and has never been disposed, so far as we can discover, to deny his obligation to pay the note to somebody. When, therefore, appellee was seeking to recover the note by the chancery suit, and Mrs. Hartman was seeking to recover the amount due upon the note by a suit at law, he should have filed a bill of interpleader instead of paying the note to Mrs. Hartman. He would thereby have protected himself. He had a right to file a bill of interpleader under the circumstances stated. (*Ryan* v. *Lamson*, 153 Ill. 520; *National Live Stock Bank* v. *Platte Valley State Bank*, 54 Ill. App. 483; *Curtis* v. *Williams*, 35 id. 518; *Livingstone* v. *Bank of Montreal*, 50 id. 562).

When appellant paid the note to Mrs. Hartman, if he paid it, the present suit was pending, and he and Hartman and Kuhns and Kintz and all the agents were parties to that suit. He thus had full notice of the claim of appellee, and was aware of the fact, that appellee was prosecuting the suit in the Appellate Court and in this court.

It is undoubtedly a hardship upon appellant to pay the $750.00 and the note to appellee, if he has already paid them to Hartman or his wife, but, in view of the circumstances already stated, and for the reasons already given, he has no equity in the matter which is superior to the equity of appellee.

Accordingly the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*