*In re* MARRIAGE OF REBECCA CLARKE, f/k/a Rebecca Antonacci, Petitioner-Appellant, and Tino L. Antonacci, Respondent-Appellee.

First District (4th Division)   No. 1—89—0607

Opinion filed February 1, 1990.

Sewell & Brown, of Chicago (J. Roger Sewell and Burton A. Brown, of counsel), for appellant.

Aladar F. Siles, of Arlington Heights, for appellee.

JUSTICE LINN delivered the opinion of the court:

Petitioner, Rebecca Antonacci, in a post-dissolution of marriage proceeding, appeals from the trial court's order that denied her motion to vacate an agreed order, which her attorney entered into allegedly without her authority. The agreed order modified the custody arrangements of the parties' children from joint custody in the parties to sole custody in respondent, Tino Antonacci. On appeal, Rebecca contends that the trial court erred in holding her to the terms of the agreed order.

We affirm.

BACKGROUND

Rebecca and Tino were divorced in January 1983. They have three children, all minors. By agreement, the children initially were in the sole custody of Rebecca. In December 1984 the court entered another agreed order, in which the custody of the children was granted to the parties jointly. This order set out a detailed schedule of the children's time with each parent. In January 1987 the parties again modified the custody arrangement, by agreement, keeping the joint custody provision but awarding Tino sole physical custody with visitation in Rebecca.

In January 1988 Rebecca filed a petition for change of custody and other relief. She alleged that Tino had abused the children. The court appointed Dr. Janice Friedman to evaluate the parties and the children psychologically and to give an expert opinion bearing on the issues of custody and visitation. The parties agreed to her appointment.

On July 14, 1988, Dr. Friedman prepared her written report which found in part that "Tino Antonacci appears to be the psychological parent to the three boys and for this reason should be given sole custody with Ms. Rebecca Clarke having regular and frequent visitation." She submitted her report to the court and the parties, but it was never formally introduced as evidence.

In September 1988 Tino filed his petition to terminate joint cus-

tody, requesting sole custody of the children. The court set the case for pretrial conference on November 28, 1988, and reserved trial dates of December 14, 15, and 16, 1988.

At the pretrial conference, Tino, his attorney, and an attorney from the office of Rebecca's attorney met with the court in chambers. Rebecca's attorney withdrew her petition for change of custody and sought increased visitation with the children, plus an increase in support during the time of the additional visitation. In the agreed order that was entered during the pretrial conference, Tino was awarded sole custody of the three children and Rebecca was given increased visitation.

On December 22, the parties appeared in court on a matter involving Tino's alleged arrearages in child support payments. Rebecca's attorney did not then, or at any earlier time, inform the court that his client had not intended to agree to that portion of the agreed order of November 28 which gave Tino sole custody. It was not until December 27, 1988, that Rebecca filed her motion to vacate the previously entered agreed order on the grounds that her attorney had erroneously agreed to a change in the custody provisions, without her knowledge or consent.

At the hearing on her motion to vacate, Rebecca's attorney explained to the court the circumstances leading to his mistake. He asserted he was not the usual attorney who represented Rebecca and was not familiar with the file. He had been instructed to withdraw Rebecca's petition for change of custody and to seek additional visitation. In an affidavit attached to the motion to vacate, however, he stated that he had not been authorized to agree to the change of custody that gave sole custody to Tino and that his client wished to contest Tino's petition.

The court heard argument on the motion to vacate but found insufficient grounds to vacate the agreed order.

OPINION

The sole issue presented is whether Rebecca should be bound by the agreed order entered at the pretrial hearing on November 28, 1988. Rebecca specifically challenges the provision of the order that changed custody of the children from joint custody in the parties to sole custody in Tino.

■■ ■ In general, a party who retains an attorney holds out the attorney as an authorized agent to receive correspondence and notices, including notice of court proceedings. (*County of Cook v. Schroeder* (1965), 55 Ill. App. 2d 449, 205 N.E.2d 257 (holding that

notice of trial to the attorney was sufficient to attribute notice to the client).) Furthermore, an attorney's statements may bind the client to a settlement agreement when the client later claims to have misunderstood the terms of the settlement (*Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 868, 356 N.E.2d 837, 840), particularly when the settlement is made in open court or in the presence of the client. (See *Szymkowski v. Szymkowski* (1982), 104 Ill. App. 3d 630, 432 N.E.2d 1209.) This authority is not unlimited, however, because an attorney who is hired to represent a client in litigation is not necessarily authorized to compromise the suit. Thus in *Danziger v. Pittsfield Shoe Co.* (1903), 204 Ill. 145, 149, the Illinois Supreme Court stated, "Before an attorney can compromise a suit, he must have a special authority for that purpose. [Citation.] Where an attorney, employed to prosecute or defend a suit, makes an agreement for the settlement of the same out of court, and without making the agreement a part of the decree or judgment in the suit, the client will not be bound *** without proof of authority in the attorney to bind the client, or acquiescence on the part of the client after knowledge of the facts; and, in such case, there is no presumption of authority, but the burden of proof rests on the party, alleging authority, to show that fact."

A challenge to *Danziger's* continued validity was recently rejected in *Kazale v. Kar-Lee Flowers* (1989), 185 Ill. App. 3d 224, 228, 541 N.E.2d 219. There the court reviewed the circumstances surrounding a settlement agreement that the plaintiff's and defendant's attorneys negotiated by telephone. The attorneys agreed upon a sum of money to completely settle the plaintiff's personal injury lawsuit. The record lacked any indication that the plaintiff was even aware that her attorney was negotiating a settlement. Her attorney testified that he told the defendant's attorney that the settlement agreement was contingent on his client's agreement. Defendant's attorney denied being informed that the settlement was contingent on anything. The plaintiff rejected the offer, and defendant then sought to enforce the oral settlement agreement between the attorneys. The appellate court reversed the trial court's order enforcing the settlement on the ground that defendant failed to sustain his burden of proving that the plaintiff's attorney had authority to conclude the settlement.

The pending case is factually distinguishable from *Kazale v. Kar-Lee Flowers*. Here, the agreed order was fashioned during a specially set pretrial conference in the presence of the judge. While it was not an agreement reached in open court in the presence of the client, as was the situation in *Szymkowski*, it was not a purely private discus-

sion between the two attorneys, either. Rebecca's attorney had been given instructions, authorized by Rebecca, to withdraw her petition to change custody in her favor. He further had been told to seek increased visitation for Rebecca, which he did. She did not wish to vacate those portions of the order, as they in fact accorded with her wishes. What she challenged, instead, was the change from joint custody to sole custody in Tino.

■ In one sense, then, the issue narrows to a consideration of *scope* of authority. Rebecca's attorney had been given the basic authority to settle the issues at the pretrial conference. She does not claim that she had no notice of the pretrial conference and, indeed, such notice would be presumed under *County of Cook v. Schroeder*. She was aware that her attorney would be attempting to resolve the matter if possible, obviating the need for a trial. She had conveyed her position and did not attend the pretrial conference. Accordingly, even if there were a misunderstanding as to the change from joint custody, it does not automatically negate her attorney's authority to enter the order that he did. To find otherwise would subject numerous pretrial settlements and agreed orders to vacation, virtually as a matter of course.

■ We do not imply that there never could be a vacation of an agreed order when one provision out of several is disputed. Particularly in child custody matters, the courts must be sensitive to the best interests of the children and policy matters that go beyond the parties' personal concerns. (See *In re Marriage of Solomon* (1980), 84 Ill. App. 3d 901, 405 N.E.2d 1289.) Nevertheless, the record indicates that the trial court, on motion to reconsider, closely questioned Rebecca's attorney to ascertain exactly what relief she was seeking. She had withdrawn her petition to obtain sole custody and had only sought increased visitation. Under the custody arrangements then in effect, Tino was already acting as the parent with sole "physical custody," with visitation rights in Rebecca. She could only point to vaguely articulated parental rights in the joint custody order of January 1987 that she has been forced to relinquish because of her attorney's mistake. She alludes to "parental rights to make decisions regarding the care, education, religious training and control of the children;" however, there is no indication that her parental rights to participate in such decisions have been affected by the agreed order. The previous order in effect, that of January 6, 1987, had given Tino "sole physical custody" and referred to Rebecca as the noncustodial parent with visitation rights. Even though the January 6 order refers to "joint custody," it does not define what parental rights are in-

tended thereunder. It does not address specific decision-making issues regarding the children's health, education, or religious training. Instead, it is primarily concerned with a detailed schedule of Rebecca's visitation and support rights. Only one paragraph of the order addresses the mediation procedure for the parties to follow should "any conflicts arise between the parents as to any of the provisions of this Joint Custody Order or the implementation thereof."

At oral argument Rebecca's attorney argued that the joint-parenting rights of section 602.1 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 602.1) include the right to make decisions regarding care, education, and religious training. He claims that Rebecca did not intend to give up these rights and that placing sole custody in Tino deprives her of participation in these decisions. Accordingly, he contends that there should have been an evidentiary hearing on whether such change was in the children's best interests.

We do not agree. The "change" in custody does not appear to be a real change from the arrangement that was in effect before the November 28 order. Tino had sole physical custody. He would thus be primarily responsible, on a day-to-day basis, for general decisions affecting the children's care, health, and the like. (See *In re Marriage of Tisckos* (1987), 161 Ill. App. 3d 302, 312, 514 N.E.2d 523.) The record reflects that the parties have been in court on various matters over the years and have a history of agreed custody/visitation orders. While it is true that joint custody and joint-parenting agreements have legal significance regarding the parents' shared decision making, Rebecca has not pointed to any cognizable relief that she would seek in a remand for a trial on Tino's petition for change of custody. She withdrew her own petition. She was aware that the court-appointed psychotherapist had concluded after interviewing all parties that the children's father was the "psychological parent" who should retain physical custody and that Rebecca should have regular and frequent visitation. She has made no showing or offer of proof to establish a ground for opposing the termination of joint custody in favor of Tino's sole custody. Neither her brief nor the record indicates that her input into the care, education, or religious training of the children has been diminished as a result of the agreed order under review. In fact, the trial court questioned her attorney on this point. The attorney assured the court that he was not aware of any past problems that the parties had concerning this type of decision making. Furthermore, neither the parties nor the court found in the record any joint-parenting agreement that would have specified each parent's authority. Ac-

cordingly, during the hearing on the motion to vacate the court relied on its broad discretion conferred under section 602.1 to award sole custody to Tino rather than fashion a joint custody arrangement.

We conclude that Rebecca's attorney had actual authority to negotiate a settlement on her behalf. To the extent he exceeded his express authority, by allowing the change from joint to sole custody, we find that his authority was the logical, implied extension of his express authority. We further conclude that Rebecca's parental rights were not prejudiced by what in this case appears to be only a nominal change of custody. See *Kminek v. Kminek* (1975), 27 Ill. App. 3d 78, 325 N.E.2d 741 (where there is no factual dispute as to an order changing custody from the mother to the father, since the parties had so agreed, the entry of an order without notice and full inquiry by the court was not improper).

In the alternative, we find that, to the extent Rebecca's attorney lacked authority to enter the challenged portion of the agreed order, Rebecca subsequently ratified it. Ratification requires an act indicating approval of the originally unauthorized act of the agent. *Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 883, 489 N.E.2d 311, 316 ("Ratification may be express or inferred and occurs where the principal, with knowledge of the material facts of the unauthorized transaction, takes a position inconsistent with non-affirmation of transaction").

In the pending case, Rebecca does not deny that she accepted the benefits of the increased visitation and support provision of the November 28 order. This indicates her knowledge of the other provisions of the order. Her failure to object immediately allowed the previously reserved trial dates in mid-December to pass, resulting in some prejudice to Tino, who presumably would have proceeded to trial and thus obtained a disposition at that time. On December 22, moreover, her attorney appeared in court on a different matter, which concerned Tino's alleged arrearages in child support. No mention was made at that time that the agreed order was not an accurate reflection of the parties' agreement. It was not until December 27, 1988, that Rebecca's attorney filed the motion to vacate the agreed order on the grounds that it had been entered into without her authority.

We cannot agree with Rebecca that the mere filing of the motion within the statutory 30-day period following entry of the November 28 order indicates a timely objection to the agreed order. That time limit simply provides the outside limit in which a court has jurisdiction to reconsider a previous order as a matter of course. In accepting the provisions of the order that benefitted her, we believe that Rebecca

ratified her attorney's authority to agree to the order. The purpose of the pretrial conference was to determine whether a trial was necessary or whether the parties could resolve their conflict by agreement. She sought, and obtained, what she wanted; Tino obtained what he wanted. We see no reason to disturb the ruling of the trial court in declining to vacate the agreed order of November 28, 1988.

For the foregoing reasons, we affirm the trial court's decision.

Affirmed.

McMORROW, P.J., and JIGANTI, J., concur.