**W. Randolph ADAMS, Plaintiff,**

v.

**TOWERS, PERRIN, FORSTER & CROSBY, INC., Defendant.**

**No. 91 C 6365.**

United States District Court, N.D. Illinois, E.D.

May 22, 1992.

Mitchell Howard MacKnin, Paul Ethan Slater, Gregg R. Hague, Sperling, Slater & Spitz, P.C., Chicago, Ill., for plaintiff.

Geoffrey G. Gilbert, McBride, Baker & Coles, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is plaintiff W. Randolph Adams's ("Adams") motion for summary judgment on Count III of his first amended complaint. For reasons that follow, the motion is denied.

## FACTS

Adams worked for Cresap, McCormick and Paget, Inc., a Chicago-based management consulting firm, between 1974 and

1990.[1] That firm became an operating division of defendant Towers, Perrin, Forster & Crosby, Inc. ("Towers, Perrin"), an international consulting firm based in New York City, in 1983. At that time Adams became a vice-president, a principal and a shareholder of Towers, Perrin. Following a 1990 Towers, Perrin management reorganization, Adams decided to resign and discussions began concerning a severance package. In late October 1990, however, Towers, Perrin notified Adams that he would be terminated effective on October 31, 1990.

Around that time, Adams retained attorney Paul E. Slater ("Slater") to handle the severance matter, and Adams so advised Towers, Perrin's chief administrative officer, Ronald Giesinger ("Giesinger"). Giesinger then informed Adams that Slater should contact Towers, Perrin's general counsel and secretary, Karl Lohwater ("Lohwater"), to continue negotiations. Both Giesinger and Lohwater averred in affidavits that Giesinger retained final approval authority over any severance package for Adams. In the fall of 1990, the executive committee of the Towers, Perrin board of directors had authorized Giesinger to negotiate severance agreements with departing senior executives of the company, including Adams. Giesinger expected reports from Lohwater on the progress of the negotiations with Slater, and expected that Lohwater would seek approval before agreeing to any severance package worth more than the $159,000 offer that Giesinger made to Adams in November 1990.

By late March or early April 1991, Slater and Lohwater reached agreement over the telephone on a severance package for Adams based on a formula used in a staff reduction program for another Towers, Perrin division. The package included a $206,030 payment, immediate repurchase of Adams's Towers, Perrin stock, a $6,000 dividend on Adams's preferred stock, and $5,000 for legal fees, among other benefits. Lohwater, according to his affidavit, told Slater that the terms were subject to approval by the Human Resources Department of Towers, Perrin. Slater, however, asserts in his affidavit that Lohwater said nothing about confirmation of the figures and placed no conditions on the agreement.

Giesinger, upon being informed of the agreed package, promptly notified Lohwater that the terms were unacceptable because the package exceeded $159,000 and an inapplicable formula had been applied. Additionally, the Towers, Perrin Human Resources Department found that Lohwater had miscalculated under the formula he used; the base payment was over $30,000 more than it should have been under that formula. Lohwater advised Slater on April 19, 1991 of Giesinger's opposition to the package, but Lohwater also said he would continue to press for its approval. On April 25, 1991, a $134,731.81 Towers, Perrin check was mailed to Adams at Lohwater's direction in accordance with the stock repurchase provisions in the severance package.

There were several communications between Lohwater and Slater in the following months in an unsuccessful effort by both men to fully implement the severance package. Giesinger's approval, however, was never obtained, the package was never reduced to a written agreement, and Adams never executed a release of his potential claims against Towers, Perrin.

Adams filed his initial complaint in this case on October 7, 1991, and an amended complaint on November 1, 1991. Counts I and II of the amended complaint raise alternative breach of contract claims involving Adams's departure from Towers, Perrin. Count III, the only count at issue in Adams's motion for summary judgment, alleges that Towers, Perrin breached an alleged settlement agreement—the severance package.

### DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be

---

**1.** The background facts set forth herein are drawn from the parties' respective statements of facts filed pursuant to Local Rules 12(m) and 12(n), and unless otherwise noted, are undisputed.

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute about a material fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence in support. *Id.* "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party must go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. A "scintilla of evidence" is insufficient; the non-movant must offer evidence on which a jury could reasonably find for him. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). Nevertheless, in deciding whether any genuine issues of material fact exist, the court must draw all reasonable inferences in the light most favorable to the non-movant. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

Adams contends that the agreement negotiated between Slater and Lohwater was complete and enforceable. Towers, Perrin responds that there was never a meeting of the minds between Slater and Lohwater because Towers, Perrin's Human Resources Department never confirmed Lohwater's figures. Additionally, Towers, Perrin claims that Lohwater lacked authority to enter into a settlement or severance agreement on Towers, Perrin's behalf;

even if Lohwater reached an agreement with Adams's attorney, it is unenforceable.

■ Initially, the court notes that neither party has addressed what state's substantive law applies to this diversity suit. Both parties, however, primarily cite Illinois cases, which is appropriate because Adams worked for an Illinois-based Towers, Perrin division and a substantial part of the negotiations at issue occurred in Illinois. *See Hartford Ins. Co. v. Occidental Fire & Cas. Co.*, 908 F.2d 235, 237 n. 5 (7th Cir.1990) (when federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, forum state's choice of law rules apply); *Anderson ex rel. Anderson v. Boy Scouts of Am., Inc.*, 226 Ill.App.3d 440, 443, 168 Ill.Dec. 492, 494, 589 N.E.2d 892, 894 (1st Dist.1992) (Illinois applies "most significant relationship" test to determine which state's law governs a contract). Therefore, the court will apply Illinois law.

Lohwater was acting as Towers, Perrin's in-house general counsel when he negotiated with Adams's attorney, Slater. Giesinger had turned over the negotiations on Adams's severance package to Lohwater immediately after Adams brought in Slater. Lohwater's second title, secretary, has no apparent relevance to his role in this case.[2]

■ The longstanding rule in Illinois is that attorneys' authority to negotiate on behalf of clients is very limited, unless greater authority is expressly granted.

> An attorney has no power, without express authority, to bind his client by a compromise of a pending suit, or other matter, intrusted to his care. An executory agreement to compromise a suit, made by an attorney, does not bind the client, unless the latter ratifies such agreement after full knowledge of all the facts. The attorney has no implied au-

---

**2.** If Lohwater had negotiated as secretary of Towers, Perrin, he would not have any greater authority than he did as general counsel.

> The secretary of a corporation has no power, merely as secretary of the company, to make contracts for it.... The corporation may, of course, expressly authorize the secretary to

contract for it, or may accept and ratify his contracts after they are made. A secretary is a mere servant.... [N]o person can assume that he has any authority to represent anything at all.

*City of Chicago v. Stein*, 252 Ill. 409, 412, 96 N.E. 886, 888 (1911) (citations omitted).

thority to compromise his client's claim, or to release his client's cause of action. He cannot bind his client by any act, which amounts to a surrender, in whole or in part, of any substantial right.

*McClintock v. Helberg,* 168 Ill. 384, 391–92, 48 N.E. 145, 147–48 (1897) (citations omitted); *accord Danziger v. Pittsfield Shoe Co.,* 204 Ill. 145, 149–50, 68 N.E. 534, 535–36 (1903); *Hopkins v. Holt,* 194 Ill.App.3d 788, 793, 141 Ill.Dec. 407, 410–11, 551 N.E.2d 400, 403–04 (1st Dist.1990); *Kazale v. Kar–Lee Flowers,* 185 Ill.App.3d 224, 227–28, 133 Ill.Dec. 382, 384–85, 541 N.E.2d 219, 221–22 (2d Dist.1989) (citing *Danziger*). Federal law also requires express authority for attorneys to bind their clients to settlements. *Bradford Exch. v. Trein's Exch.,* 600 F.2d 99, 102 (7th Cir.1979); *Balavender v. Shelley,* 587 F.Supp. 1054, 1056 (N.D.Ill.1984).

Adams, as the party seeking to enforce the alleged agreement, has the burden of showing that Lohwater had express authorization to enter into the agreement on Towers, Perrin's behalf. *Danziger,* 204 Ill. at 149, 68 N.E. at 536; *Kazale,* 185 Ill.App.3d at 229, 133 Ill.Dec. at 386, 541 N.E.2d at 223.

Nonetheless, Adams seeks to evade the rule requiring express authority for attorney settlements by arguing that the rule does not apply until a lawsuit has been filed, and does not apply to in-house counsel for corporations. Adams, however, has not offered any authority for these purported exceptions to the rule; he merely argues that pre-litigation settlements and in-house counsel are outside the facts of the cases establishing the rule.

These arguments are unavailing because Adams's purported exceptions are inconsistent with the rule's rationale. There is no basis, logically or legally, for finding that the filing of a lawsuit triggers the express authority requirement for settlements. Clients who hire an attorney to handle a particular matter need just as much protection from unauthorized settlements before a lawsuit is filed as they would after a lawsuit is filed. Adams offers no reason to think otherwise. The

passage quoted above from *McClintock* clearly provides that express authority is required before an attorney can "surrender ... any substantial right" of a client. *McClintock,* 168 Ill. at 392, 48 N.E. at 148. Moreover, corporations with in-house counsel are no less entitled to this protection than corporations with outside counsel. The attorney-client relationship is essentially the same when representation is by in-house or outside counsel. *See, e.g., Textor v. Board of Regents,* 711 F.2d 1387, 1396 (7th Cir.1983) (defendant with in-house counsel entitled to share in attorney fee award; "a prevailing party's decision as to how to engage counsel should have no bearing upon the court's decision to punish malfeasant counsel"); *Herbster v. North Am. Co. for Life and Health Ins.,* 150 Ill.App.3d 21, 26–27, 103 Ill.Dec. 322, 325, 501 N.E.2d 343, 346 (2d Dist.1986) (in-house counsel for corporation cannot sue for retaliatory discharge; "we cannot separate plaintiff's role as an employee from his profession"), *appeal denied,* 114 Ill.2d 545, 108 Ill.Dec. 417, 508 N.E.2d 728, *cert. denied,* 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 105 (1987).

Towers, Perrin can therefore only be bound by Lohwater's agreement with Adams if Lohwater had express authority, or if Towers, Perrin ratified the agreement. Apparent authority cannot be sufficient.

Adams has failed to show that the uncontroverted facts establish that Lohwater had express authority to settle with Adams. The Towers, Perrin board's executive committee apparently gave such express authority to Giesinger, who clearly opposed Lohwater's agreement as soon as he learned its details. Giesinger's assignment of the negotiations to Lohwater was not specific enough, based on the materials submitted to the court, to constitute a grant of express authority to settle upon Lohwater, assuming that Giesinger could delegate such authority, which has not been shown.

Additionally, the uncontroverted facts do not establish that Towers, Perrin ratified or adopted the agreement. Rat-

ification, either express or implied, "occurs where the principal with knowledge of the material facts of the unauthorized transaction, takes a position inconsistent with non-affirmation of [the] transaction." *In re Marriage of Clarke*, 194 Ill.App.3d 248, 255, 141 Ill.Dec. 174, 178, 550 N.E.2d 1220, 1224 (1st Dist.1990) (quoting *Hofner v. Glenn Ingram & Co.*, 140 Ill.App.3d 874, 883, 95 Ill.Dec. 90, 95, 489 N.E.2d 311, 316 (1st Dist.1986)). Ratification can only occur where the principal had both full knowledge and the option of accepting or rejecting the benefits of the unauthorized transaction. *Bank of Waukegan v. Epilepsy Found. of Am.*, 163 Ill.App.3d 901, 908, 114 Ill.Dec. 943, 947, 516 N.E.2d 1337, 1341 (2d Dist.1987). Additionally, acquiescence—waiting to oppose an unauthorized transaction until after the benefit or detriment of the transaction becomes clear—may constitute ratification if the principal had a duty under the circumstances to repudiate the transaction. *Forkin v. Cole*, 192 Ill.App.3d 409, 427, 139 Ill.Dec. 410, 422, 548 N.E.2d 795, 807 (4th Dist.1989).

■ There was no apparent delay in Towers, Perrin's opposition to the alleged agreement Lohwater reached with Adams's attorney. Once Giesinger learned of the details of the agreement, he opposed it and directed that Adams's attorney, Slater, be informed that there was no agreement. Although the agreement was partially performed—Adams's Towers, Perrin stock was repurchased at the agreed value—it is disputed as to whether that part of the deal was beneficial to either party. Adams contends he received a lower interest rate than he was entitled to under a formula in the Towers, Perrin bylaws. Towers, Perrin contends that Adams received a $6,000 dividend payment to which he was not entitled, and that the valuation date for his stock was a year later, and the price therefore higher, than provided for in the bylaws. Moreover, the stock repurchase check was prepared at Lohwater's direction. It is not clear how much Giesinger, or any higher authority within Towers, Perrin, knew about that action. Adams has therefore failed to show, for purposes of summary judgment, that Towers, Perrin ratified the alleged severance agreement.

In sum, Adams was required under the circumstances to show either that Lohwater had express authority to enter into the alleged severance agreement with Adams or that Towers, Perrin ratified that agreement. Adams, however, failed to show that the uncontroverted facts establish either of those possibilities. Consequently, Adams's motion for summary judgment on Count III of his amended complaint is denied. In view of this disposition, the court finds it unnecessary to decide whether the uncontroverted facts establish a "meeting of the minds" between Lohwater and Adams's attorney.

### CONCLUSION

For the above reasons, Adams's motion for summary judgment on Count III of his amended complaint is denied.

IT IS SO ORDERED.